# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JOHN C. GRIMBERG COMPANY, INC., | |
| *Plaintiff*, | |
| v. | No. 1:23-cv-01690 |
| XL SPECIALTY INSURANCE COMPANY *et al*., | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Thomas S. Garrett (VSB No: 73790)
HARMAN CLAYTOR CORRIGAN & WELLMAN, P.C.
P.O. Box 70280
Richmond, VA 23255
Phone:   (804) 747-5200
Fax:       (804) 747-6085
tgarrett@hccw.com

Of counsel (*pro hac vice* forthcoming):

Ezra S. Gollogly
Joseph Dudek
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax:     (410) 539-1269
egollogly@kg-law.com
jdudek@kg-law.com

*Attorneys for XL Specialty and XL America*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 6

LEGAL STANDARDS .......................................................................................... 6

    Dismissing an Action ........................................................................................6

    Evaluating Insurance Coverage .......................................................................7

ALLEGED FACTS................................................................................................. 7

    Construction......................................................................................................7

    Grimberg's Claims ...........................................................................................8

    Insurance ..........................................................................................................9

ARGUMENT ....................................................................................................... 10

    I.    The Excess Policies follow form to the Old Republic policies. ...................10

    II.    Maryland law governs interpretation of all relevant insurance policies. ....................11

    III.    Grimberg's defective construction is not an "occurrence," so there can be no coverage for resulting property damage. ...................................................12

        A.    Defective construction of the ICF walls was not an "occurrence."..................13

        B.    Grimberg's rip and tear costs are not property damage caused by an occurrence.........................................................................................15

    IV.    Grimberg alleges no legal obligation to pay damages to the Navy. ...........................17

    V.    Even if the insuring agreements provided coverage, the business-risk exclusions would apply, removing coverage. .............................................18

    VI.    XL Specialty and XL America denied Grimberg's claim in good faith. ....................21

CONCLUSION..................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Aetna Ins. Co. v. Aaron*,
112 Md. App. 472 (1996) ................................................................................. 17

*All Class Constr., LLC v. Mut. Benefit Ins.*,
3 F. Supp. 3d 409 (D. Md. 2014) ...................................................................... 21

*Bloch v. Homesite Ins. Co.*,
No. 1:14-cv-1208 (AJT), 2015 WL 13854990 (E.D. Va. July 17, 2015) .................................. 6

*Brohawn v. Transamerica Ins. Co.*,
276 Md. 396 (1975) .......................................................................................... 7

*Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*,
709 F. Supp. 2d 432 (E.D. Va. 2010) ............................................................... 18

*Builders Mut. Ins. Co. v. J.L. Albrittain, Inc.*,
No. 1:19-cv-1315, 2020 WL 2297187 (E.D. Va. May 7, 2020) ............................................ 20

*Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*,
261 F. Supp. 3d 680 (E.D. Va. 2017) ............................................................... 22

*Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*,
636 F. Supp. 2d 481 (D. Md. 2009) .................................................................. 21

*Century I Joint Venture v. U.S. Fid. & Guar. Co.*,
63 Md. App. 545 (1985) .................................................................................. 20

*Clipper Mill Fed., LLC v. Cincinnati Ins. Co.*,
No. 1:10-cv-1647, 2010 WL 4117273 (D. Md. Oct. 20, 2010) ............................................. 14

*Copp v. Nationwide Mut. Ins. Co.*,
692 S.E.2d 220 (Va. 2010) ............................................................................... 7

*Elec. Motor & Contracting Co., Inc. v. Travelers Indem. Co. of Am.*,
235 F. Supp. 3d 781 (E.D. Va. 2017) ............................................................... 18

*Entrepraneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*,
No. 3:22-cv-529, 2023 WL 5670041 (E.D. Va. Aug. 31, 2023) ........................................... 9

*Erie Ins. Exch. v. Salvi*,
86 Va. Cir. 132 (2013) ..................................................................................... 19

*Fed. Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*,
769 F. Supp. 2d 865 (D. Md. 2011) .................................................................. 19

*Florists' Mut. Ins. Co. v. Tatterson*,
    802 F. Supp. 1426 (E.D. Va. 1992) ...................................................... 22

\* *French v. Assurance Co. of Am.*,
    448 F.3d 693 (4th Cir. 2006) ............................................................ 13

*Harris v. Harris v. Keystone Ins. Co.*,
    No. 1:13-cv-2839, 2013 WL 6198160 (D. Md. Nov. 26, 2013).............. 21

*Hopeman Bros., Inc. v. Cont'l Cas. Co.*,
    307 F. Supp. 3d 433 (E.D. Va. 2018) ................................................. 12

*Jessco, Inc., v. Builders Mut. Ins. Co.*,
    472 F. App'x 225 (4th Cir. 2012) ...................................................... 20

*Johnson v. Federal Kemper Ins. Co.*,
    74 Md. App. 243 (1988) ................................................................... 21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)......................................................................... 11

\* *Lerner v. Assurance Co. of Am.*,
    120 Md. App. 525, 536 (1998) ................................................... 13, 14

*Lexie v. State Farm Mut. Auto. Ins. Co.*,
    469 S.E.2d 61 (Va. 1996) ................................................................. 11

*OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*,
    242 F. App'x 936 (4th Cir. 2007) ...................................................... 16

*Philips v. Pitt County Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) .............................................................. 9

*Randall v. United States*,
    30 F.3d 518 (4th Cir. 1994) ................................................................ 6

*Rex. Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
    407 F.3d 631 (4th Cir. 2005) ............................................................ 12

*Stanley Martin Cos., Inc. v. Ohio Cas. Grp.*,
    313 F. App'x 609 (4th Cir. 2009) ...................................................... 15

*Travelers Indem. Co. of Am. v. Foundations Unlimited, Inc.*,
    299 Fed. App'x 277 (2008).............................................................. 14

*Travelers Indem. Co. of Am. v. Tower-Dawson, LLC*,
    299 Fed. App'x 277 (4th Cir. 2008) .............................................. 13, 16

*Trulock v. Freeh*,
　275 F.3d 391 (4th Cir. 2001) ................................................................... 7

*W.M. Schlosser Co. v. Ins. Co. of N. Am.*,
　325 Md. 301 (1992) ................................................................................. 17

\* *Woodfin Equities Corp. v. Harford Mut. Ins. Co.*,
　110 Md. App. 616 (1996) ........................................................................ 16

*Zak v. Chelsea Therapeutics Itern., Ltd.*,
　780 F.3d 597 (4th Cir. 2015) ................................................................... 7

**TREATISES**

Allan D. Windt, 3 Insurance Claims and Disputes (6th ed. Feb. 2023) ................................. 21

Jeffrey E. Thomas and Francis J. Mootz, III, 3 New Appleman on Insurance Law
　Library Edition (LexisNexis 2023) .......................................................... 20

Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law*
　§ 11:239 (July 2022) ............................................................................... 17

**STATUTES**

Md. Code Ann., Cts. & Jud. Proc. § 3-1701 ............................................ 21

Md. Code Ann., Ins. § 27-1001 ............................................................... 21

# INTRODUCTION

Plaintiff John C. Grimberg Company, Inc. is building a school at Marine Corps Base Quantico. The school is supposed to be built with load-bearing, rebar-supported concrete walls, so that it can withstand harsh winds or earthquakes. But Grimberg and its subcontractors built defective walls—they poured the concrete in a way that let the rebar "drift" out of position, undermining the walls' structural integrity. When the Navy discovered the issue, it directed Grimberg to tear down the walls and replace the faulty work.

In this action, Grimberg seeks general liability insurance coverage for costs related to Grimberg's tearing down and replacing its own defective construction. Compl. ¶ 28. But the Defendants' insurance policies do not cover those costs for at least three reasons. *First*, under applicable Maryland law, Grimberg's tearing down the school to fix its own defective work is not "property damage" that is "caused by an occurrence." *Second*, Grimberg does not allege any "sums" that it is "legally obligated to pay as damages" to any third party, as required by Defendants' insurance policies. *Third*, the insurance policies contain exclusions that exclude the risk that Grimberg and its subcontractors will have to fix their mistakes.

Any of these would be a sufficient reason to dismiss this action. Together, they overwhelmingly demonstrate that Grimberg has no coverage. This Court should dismiss this action with prejudice.

# LEGAL STANDARDS

## Dismissing an Action

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the Complaint and does not resolve contests surrounding the facts or merits of a claim. *Bloch v. Homesite Ins. Co.*, No. 1:14-cv-1208 (AJT), 2015 WL 13854990, at *2 (E.D. Va. July 17, 2015) (citing *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994)). A claim should be dismissed "if, after accepting

all well-pleaded allegations in the plaintiff's complaint as true ... it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, courts may consider documents attached or incorporated into the complaint when deciding a Rule 12(b)(6) motion to dismiss. *Zak v. Chelsea Therapeutics Itern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

### Evaluating Insurance Coverage

Ordinarily, a court begins by comparing a complaint against its insured with the text of the insurance policy, to determine whether a duty to defend arises, and, if so, then reviews the actual facts to determine whether a duty to indemnify exists. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407 (1975); *Copp v. Nationwide Mut. Ins. Co.*, 692 S.E.2d 220, 224 (Va. 2010). Here, there is no complaint against Grimberg for the Court to read; there is just a letter from the Navy directing Grimberg to tear down its defective walls. Compl. Ex. A, ECF No. 1-2. The court is thus left with only Grimberg's allegations about its own damaged property and the text of the insurance policies.

### ALLEGED FACTS[1]

### Construction

"In November 2017, the Navy awarded Grimberg a contract" to build a school at "Marine Corps Base Quantico." Compl. ¶ 14. The school was to be built using "Insulated Concrete Form ('ICF') walls" that would support "[s]tructural steel beams and joists" that hold up the "second-floor slabs and roof." *Id*. The Navy chose these ICF walls to withstand "vertical and lateral loads anticipated to be imposed on a school structure located on a Marine base." Compl. ¶ 15.

---

[1] Defendants assume for this motion that all well-pled facts in the complaint are true. Defendants reserve their right to challenge any allegation if the complaint survives this motion.

But the ICF walls Grimberg and its subcontractors built were defective. Testing in 2021 found "void spaces" in the walls "that needed to be repaired." Compl. ¶ 20. Further investigation revealed that the reinforcing steel bars ("rebar") in the walls "had drifted toward the middle of the walls, resulting in defective walls," Compl. ¶ 21, and this drifting affected walls "throughout the project," Compl. ¶ 22. The walls were "so defective as to be not correctable." Compl. ¶ 24.

So "the Navy ordered that the ICF walls 'be demolished and reconstructed.'" Compl. ¶ 25. And here is Grimberg's key allegation:

> In the course of demolishing and reconstructing the ICF walls, Grimberg incurred costs to repair or replace property damage to other conforming work of other subcontractors. This work includes ductwork, HVAC piping, insulation, metal decking, roofing, shoring and storing of structural steel, slab protection, underslab radon piping, underground electrical work, foundation dowel bars, concrete masonry unit walls, fireproofing, mechanical, electrical and plumbing ("MEP") work, walls and doorframes, exterior wall waterproofing, vapor barrier, brickwork and refurbishing materials that have been stored by Grimberg and other subcontractors while the demolition and reconstruction work was taking place.

Compl. ¶ 28.

**Grimberg's Claims**

Grimberg filed this action to, among other things, establish coverage for the damages alleged in paragraph 28 of its three-count complaint. In Count I, Grimberg seeks a declaration that the "excess insurers are obligated to provide Grimberg with insurance coverage for property damage to conforming work." Compl. ¶ 50. In Count II, Grimberg alleges that the excess insurers have breached their contracts (the insurance policies) by refusing to provide such coverage. Compl. ¶ 57. And in Count III, Grimberg contends that by refusing to provide coverage, the insurers breached the implied covenant of good faith and fair dealing. Compl. ¶ 65.

**Insurance**

In all relevant policy years, Grimberg bought commercial general liability policies from non-party Old Republic General Insurance Corporation. Compl. ¶¶ 30, 33, 36.[2] The Old Republic policies offer certain insurance coverage but only up to the applicable limit of liability: $1 million for each "occurrence" and $2 million total. *Id.*

For coverage above these liability limits, Grimberg bought Defendants' excess policies ("Excess Policies"). Compl. ¶¶ 31, 34, 37, 39. For the period from October 1, 2018 to October 1, 2019, Grimberg bought a policy from XL Specialty Insurance Company ("XL Specialty") with a $25 million per-occurrence limit and a $25 million aggregate limit. Compl. ¶ 31. For the period from October 1, 2019 to October 1, 2020, Grimberg bought another policy from XL Specialty with a $25 million per-occurrence limit and a $25 million aggregate limit. Compl. ¶ 34. For the period from October 1, 2020 to October 1, 2021, Grimberg bought a policy from Arch Specialty Insurance Company ("Arch Specialty") with a $1 million per-occurrence limit and a $2 million aggregate limit and, above that, a policy from XL Insurance America, Inc. ("XL America") with a $10 million per-occurrence limit and a $10 million aggregate limit. Compl. ¶¶ 37, 39. Watford Specialty Insurance Company ("Watford") is a 50% quota share participant with Arch Specialty on the Arch Specialty policy.

The Excess Policies are "follow form" excess policies, in that they provide coverage only for claims covered by the underlying (Old Republic) policies, subject to some additional

---

[2] The terms of the insurance policies speak for themselves, so the Court should not rely on Grimberg's allegations about the terms. The insurance policies are "integral to the complaint and authentic," so the Court can read the policies directly. *Entrepraneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*, No. 3:22-cv-529, 2023 WL 5670041, at *2 (E.D. Va. Aug. 31, 2023) (citing *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). All relevant insurance policies were attached to the complaint as exhibits.

exclusions and terms. Compl. ¶¶ 32, 35, 38, 40. Thus, the coverage provisions and exclusions in the Old Republic policies affect whether there is coverage under the Excess Policies.

Grimberg asserts that the Defendants owe coverage under the Excess Policies and that the Defendants' failure to provide coverage breaches an implied covenant of good faith and fair dealing. Compl. ¶¶ 29, 49–66.

## ARGUMENT

The Excess Policies do not afford the coverage Grimberg seeks. Grimberg promised to build the Navy a contract-compliant school at a contract-fixed price. Grimberg cannot get more money from its insurers just because Grimberg's or its subcontractors' defective work made the construction more expensive. This basic concept is so deeply woven into general liability insurance that at least three provisions preclude coverage: the portion of the insuring agreement requiring "property damage" caused by an "occurrence"; the portion of the insuring agreement requiring that Grimberg be legally obligated to pay damages; and the business-risk exclusions. But we start with the fundamentals: how these seven insurance policies interact, and which law governs their interpretation.

## I. The Excess Policies follow form to the Old Republic policies.

All of the Excess Policies pledge coverage only if something is covered by the Old Republic policies:

- The XL Specialty policies promise, under certain conditions, to "pay on behalf of [Grimberg] … those amounts [Grimberg] becomes legally obligated to pay as damages in excess of the **scheduled underlying insurance** as a result of a **claim** covered by the **scheduled underlying insurance**." Compl. Ex. D, ECF No. 1-7, at 17; Compl. Ex. F, ECF No. 1-5, at 17.[3]

---

[3] All citations to pages in exhibits to the complaint are to the blue page numbers added to the document by CM/ECF at the top of the page, not to any preexisting pagination.

- The Arch Specialty policy promises, under certain conditions, to "pay on behalf of [Grimberg] … those amounts of **loss** for which coverage is provided under the definitions, terms, conditions, limitations, and exclusions of the **controlling underlying insurance**." Compl. Ex. H, ECF No. 1-9, at 6.

- The XL American policy covers a loss, under certain conditions, only if it "is insured by all of the policies shown in our Schedule of 'Underlying Insurance'. If any 'Underlying Insurance' does not pay damages, for reasons other than exhaustion of the aggregate limit of insurance, then we shall not pay such damages." Compl. Ex. I, ECF No. 1-10, at 28.

And each of the policies contains a schedule of underlying insurance listing that year's Old Republic policy as underlying insurance. Compl. Ex. D, ECF No. 1-7, at 15; Compl. Ex. F, ECF No. 1-5, at 15; Compl. Ex. H, ECF No. 1-9, at 3; Compl. Ex. I, ECF No. 1-10, at 14. Thus, each of the Excess Policies provides coverage only if the Old Republic policies would have provided coverage but for their exhaustion.

## II. Maryland law governs interpretation of all relevant insurance policies.

The Old Republic policies, and thus the Excess Policies, "appl[y] to … 'property damage' only if: [t]he … 'property damage' is caused by an 'occurrence.'" Compl. Ex. C, ECF No. 1-4, at 8. As used here, "occurrence" means "an accident, including continuous or repeated exposure to substantially the same harmful conditions." *Id*. at 22.

To understand whether Grimberg's defective construction counts as an "occurrence" or an "accident" under the insurance policies, this Court applies Maryland law. Under Virginia conflict of law principles,[4] a contract (including an insurance policy) is "governed by the law of the place where made." *Lexie v. State Farm Mut. Auto. Ins. Co.*, 469 S.E.2d 61, 63 (Va. 1996). A contract is "made" where "the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." *Rex. Bankshares Corp. v. St.*

---

[4] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (federal courts sitting in diversity apply the conflict of laws principles of the state in which they sit).

*Paul Mercury Ins. Co.*, 407 F.3d 631, 635–36 (4th Cir. 2005). Absent evidence to the contrary, courts will assume that the insurance policy was delivered to the insured at its home address. *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 307 F. Supp. 3d 433, 441 (E.D. Va. 2018).

Each of the Excess Policies contains a declarations page, which describes delivery to a Maryland company at its Maryland address. Compl. Ex. D, ECF No. 1-5, at 10 (XL Specialty); Compl. Ex. F, ECF No. 1-7, at 10 (XL Specialty); Compl. Ex. H, ECF No. 1-9, at 1 (Arch Specialty & Watford); Compl. Ex. I, ECF No. 1-10, at 10 (XL America). And each of the primary policies, to which the Excess Policies follow form, was similarly delivered to a Maryland company at its Maryland address, using a Maryland broker. Compl. Ex. C, ECF No. 1-4, at 5; Compl. Ex. E, ECF No. 1-6, at 2; Compl. Ex. G, ECF No. 1-8, at 2.

Because all relevant insurance policies were delivered to Grimberg in Maryland, Maryland law governs the interpretation of those policies.

### III. Grimberg's defective construction is not an "occurrence," so there can be no coverage for resulting property damage.

Grimberg is entitled to insurance coverage only if its claim falls within the insuring agreement. The applicable insuring agreements provide that the insurers:

> … will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. …
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" … .

*Id*. The terms in quotation marks are defined terms. Most importantly, "occurrence":

> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

*Id*. at 22.

Grimberg's defective construction of the ICF walls was not an "occurrence" under this definition. Appearing to understand this, Grimberg seems to contend that the "occurrence" was its tearing down other non-defective work. Compl. ¶ 28. But that is wrong too; if while repairing the ICF walls, Grimberg intentionally removed or tore down other parts of the project, those "rip and tear" costs are not covered because the cost to repair the defective ICF walls is not covered.

## A. Defective construction of the ICF walls was not an "occurrence."

In construction defect cases, Maryland law provides that property damage cannot be "caused by an occurrence" unless the defective work causes damage to other non-defective work. *French v. Assurance Co. of Am.*, 448 F.3d 693, 706 (4th Cir. 2006); *Lerner v. Assurance Co. of Am.*, 120 Md. App. 525, 536 (1998). As *French* explained:

> We hold that, under Maryland law, a standard 1986 commercial general liability policy form published by the ISO does not provide liability coverage to a general contractor to correct defective workmanship performed by a subcontractor. We also hold that, under Maryland law, the same policy form provides liability coverage for the cost to remedy unexpected and unintended property damage to the contractor's otherwise nondefective work-product caused by the subcontractor's defective workmanship. With respect to this last holding, we assume *arguendo* that no other policy exclusion applies.

448 F.3d at 706. It is not enough that *remedying* defective work causes other damage; it must be the defective work itself that damaged other parts of the construction. *Travelers Indem. Co. of Am. v. Tower-Dawson, LLC*, 299 Fed. App'x 277, 282 (4th Cir. 2008) ("the cost of installing the new retaining wall and the cost of repairing the damage to the federally protected wetlands brought about by the installation of the new retaining wall are not covered losses under the Policies").

Under Grimberg's own allegations, Grimberg cannot satisfy this standard. Grimberg does not allege that the structurally unsound ICF walls themselves damaged any other part of the property. Instead, Grimberg specifically alleges that *remedying* the defective ICF walls caused

other damage: "In the course of demolishing and reconstructing the ICF walls, Grimberg incurred costs to repair or replace property damage to other conforming work of subcontractors." Compl. ¶ 28. Such damage from remediation is not property damage "caused by an occurrence," so it is not covered by the Excess Policies.

What's more, damages suffered to satisfy a contractual obligation are not covered by general liability insurance. *Lerner*, 120 Md. App. at 536 ("We do not believe that appellants' liability to repair the Building's facade resulted from an 'accident' but simply from its failure to satisfy its obligation under their contract."). "If the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen. In other words, and in the context of this case, it should not be unexpected and unforeseen that, if the Building delivered does not meet the contract requirements of the sale, the purchaser will be entitled to correction of the defect." *Id.*; *see Clipper Mill Fed., LLC v. Cincinnati Ins. Co.*, No. 1:10-cv-1647, 2010 WL 4117273, at *5 (D. Md. Oct. 20, 2010) (quoting and applying this part of *Lerner*). "[P]oor performance by an insured is a cost of doing business, not a component of the insurance objective of shifting risk." *Lerner*, 120 Md. App. at 537. "[I]f a product does not meet the contract requirements of a sale, it should not be unforeseen that 'the purchaser will be entitled to correction of the defect.'" *Travelers Indem. Co. of Am. v. Foundations Unlimited, Inc.*, 299 Fed. App'x 277, 282 (2008).

When the Navy ordered Grimberg to tear down the school's walls, Grimberg had not completed construction. Compl. Ex. A, ECF No. 1-2, at 1 (The Navy directs that Grimberg is "not to proceed with the work without Government approval of JCG's method and schedule"). Grimberg's complaint makes clear that Grimberg demolished and reconstructed the walls on

orders from the Navy. That is obviously intentional, not accidental, conduct.[5] It was thus not an "occurrence" when the Navy directed Grimberg to do what "[t]he subject contract requires." *Id*.

This conclusion defeats each of Grimberg's claims. On Count I, Grimberg is not entitled to a declaration of coverage, because there is no "occurrence" and therefore the insuring agreement is not satisfied. On Count II, Grimberg is not entitled to damages for breach of contract, because the insurers did not breach the contract. And on Count III, the insurers did not violate any good-faith obligation; they correctly and in good faith denied Grimberg's claim.

### B. Grimberg's rip and tear costs are not property damage caused by an occurrence.

The cost of tearing down parts of the school to access ICF walls would be covered property damage only if Grimberg was accessing covered property damage. But because the thing Grimberg was trying to access—the defective ICF walls—had not sustained covered property damage, the cost of accessing it is not covered, either.

Grimberg must show "property damage" caused by an "occurrence":

> … will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. …
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" … .

Compl. Ex. C, ECF No. 1-4, at 8. For reasons above, Grimberg lacks an occurrence. But under Maryland law, Grimberg also lacks property damage.

---

[5] This Court could reach the same result under Virginia law. The Fourth Circuit has predicted that Virginia would follow *French*. *See Stanley Martin Cos., Inc. v. Ohio Cas. Grp.*, 313 F. App'x 609, 614 (4th Cir. 2009) ("Virginia insurance law is not materially different from Maryland insurance law").

Maryland courts have squarely rejected the argument that the ripping and tearing to access otherwise non-covered property is property damage: "Voluntarily pulling up carpeting or breaking through dry-wall to access the HVAC units is not property damage; it is the cost incurred in replacing and repairing the HVAC systems. Even if it could be considered 'property damage,' we would hold that it was not caused by an 'occurrence,' because the so-called damage was not accidental." *Woodfin Equities Corp. v. Harford Mut. Ins. Co.*, 110 Md. App. 616, 649 (1996), *rev'd in part on other grounds,* 344 Md. 399, 687 A.2d 652 (1997); *see Tower-Dawson*, 299 F. App'x at 282 (applying *Woodfin*).

The Fourth Circuit has applied the rule from *Woodfin* to the removal and destruction of caps and columns, damaged as part of the repair of defective grout. *OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 F. App'x 936, 941 (4th Cir. 2007) (applying Maryland law). Grimberg's defective concrete is an almost perfect analogue of Metro Ready-Mix's defective grout. The cost to access Grimberg's defective concrete is not covered property damage, even if it involves damaging non-defective property. Put simply, the remedy for property damage cannot itself create coverage if none otherwise exists.

Maryland thus follows the general rule that rip and tear costs are covered only if the ripping and tearing is to access covered property damage. Barbara O'Donnell, *Differing Judicial Approaches to "Rip and Tear" Damages and "Legally Obligated to Pay as Damages" Disputes Surrounding Non-Litigated Faulty Workmanship Claims*, 64 NO. 1 DRI For Def. 32, 33 (Jan. 2022). Put another way, "[i]f the repair or replacement of the covered property damage requires work that has not been damaged to be removed or destroyed, the situation falls neatly within the policy's insuring agreement." Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor*

*on Construction Law* § 11:239 (July 2022). But again, there is no covered property damage here, because the ICF walls that Grimberg was accessing did not sustain covered property damage.

Grimberg's allegations make clear that there is no coverage: Its own defective work is not property damage caused by an occurrence, and its effort to repair that defective work is not property damage caused by an occurrence. As Grimberg explains, all of the damages for which its seeks coverage are rip-and-tear damages: property damaged "[i]n the course of demolishing and reconstructing the ICF walls." Compl. ¶ 28.

There is no coverage, and this action should be dismissed on that basis. Grimberg cannot meet its burden to bring itself within the terms of the insuring agreement in its request for a declaration of coverage in Count I, cannot show a breach of contract in Count II, and cannot show lack of good faith in Count III.

## IV. Grimberg alleges no legal obligation to pay damages to the Navy.

Even if any of Grimberg's alleged injury were caused by an occurrence, there would *still* be no coverage, because there is no covered claim for the insurers to indemnify.

Among the first few words of each Old Republic policy are: "We will pay those sums that the insured becomes legally obligated to pay as damages." *See, e.g.*, Compl. Ex. C, ECF No. 1-4, at 8. But Grimberg does not allege that it became legally obligated to pay damages, so there is no coverage.

There can be coverage under liability insurance only if a "third party has sustained bodily injury, personal injury, or property damage." *W.M. Schlosser Co. v. Ins. Co. of N. Am.*, 325 Md. 301, 306 (1992). In *W.M. Schlosser*, this rule meant that a builder's careful hurricane preparation, which staved off serious property damage, was not covered. *See Aetna Ins. Co. v. Aaron*, 112 Md. App. 472, 494 (1996) (discussing *W.M. Schlosser*). Here too, Grimberg's work to prevent more severe property damage is not covered, and Grimberg does not allege that the Navy or

its subcontractors have made any claim against Grimberg for damages. There is simply no legal obligation to pay damages for the liability insurers to cover.

Again, Virginia law would require the same result. Grimberg's obligation to "pay remediation costs" is not an "obligation to pay remediation costs 'as damages' under a [general liability] policy." *Elec. Motor & Contracting Co., Inc. v. Travelers Indem. Co. of Am.*, 235 F. Supp. 3d 781, 789 (E.D. Va. 2017). When a contractor undertakes a "voluntary business decision" to remediate its own mistakes, that is not a "legal obligation to remediate." *Id.* (quoting *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 709 F. Supp. 2d 432, 439 (E.D. Va. 2010)). Instead, Grimberg must show that its obligation to pay for remediation "was compelled by a 'final judgment or a settlement of a lawsuit, a strict liability statute, or other coercive legal obligation' to pay those sums." *Id.*

Grimberg can point to no lawsuit, no strict liability statute, and no other coercive legal obligation under which it was *obligated* to pay to remediate its own defective work as *damages*. Instead, Grimberg voluntarily undertook to fix the work. Because Grimberg was not "legally obligated to pay" for this remediation as damages, it cannot be covered under the Excess Policies.

That alone requires dismissal. Because Grimberg can point to no legal obligation to pay the remediation costs as damages, it is not entitled to a declaration of liability insurance coverage in Count I, the insurers never breached any contract in Count II, and the insurers denied Grimberg's claim in good faith in Count III.

## V.     Even if the insuring agreements provided coverage, the business-risk exclusions would apply, removing coverage.

For the reasons above, Grimberg cannot get past the first few sentences of the Old Republic insuring agreements. But even if it could, the business-risk exclusions, which preclude coverage for the ordinary risks of doing business, foreclose Grimberg's claim.

Under Exclusions (j)(4), (j)(5), and (j)(6), Grimberg is not entitled to coverage for the cost of repairing its (or its contractors') work, even if the repair requires redoing other parts of the school. These provisions exclude from coverage any damage to or restoration of the school on which Grimberg and its subcontractors are working:

> **2. Exclusions**
>
> This insurance does not apply to: …
>
> **j. Damage To Property**
>
> "Property damage" to: …
>
> **(4)** Personal property in the care, custody, or control of the insured;
>
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Compl. Ex. C, ECF No. 1-4, at 11–12. As used here, "your work" means "[w]ork or operations performed by you *or on your behalf*" and "[m]aterials, parts or equipment furnished in connection with such work or operations." *Id.* at 23. This provision is enforceable according to its terms, excluding the insured's and its subcontractors' work from coverage, but not excluding parts of the property on which genuine third parties are working. *Fed. Ins. Co. v. Firemen's Ins. Co. of Washington, D.C.*, 769 F. Supp. 2d 865, 878 (D. Md. 2011); *Erie Ins. Exch. v. Salvi*, 86 Va. Cir. 132 (2013).

Exclusion (j)(4) excludes from coverage any materials that Grimberg or its subcontractors had to store during the ICF demolition. Because these materials could be stored off-site, they

are "[p]ersonal property," not real property. And at all times, they were within Grimberg's control; Grimberg could have summoned them to the job site or directed that they be stored differently.

The remaining provisions preclude coverage for the very claims Grimberg is making here. "The primary purpose of the 'your work' exclusions is to prevent general commercial liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business." *Builders Mut. Ins. Co. v. J.L. Albrittain, Inc.*, No. 1:19-cv-1315, 2020 WL 2297187, at *7 (E.D. Va. May 7, 2020) (applying Virginia law) (cleaned up) (quoting *Jessco, Inc., v. Builders Mut. Ins. Co.*, 472 F. App'x 225, 229 (4th Cir. 2012)); *Century I Joint Venture v. U.S. Fid. & Guar. Co.*, 63 Md. App. 545, 553 (1985). As this Court has explained:

> The "your work" exclusions withdraw coverage in cases where the insured causes property damage to work done by the insured or its subcontractors. In contrast, they do not exclude coverage for damage to a third-party's work. In short, where all of the damage that is being claimed is damage to the work of the insured which is caused by the work of the insured, the "your work" exclusion will apply to preclude coverage.

*J.L. Albrittain*, 2020 WL 2297187, at *7 (cleaned up). And as one leading treatise explains:

> The risk that a business is not very good at what it does is fundamentally different from the risk that its activities will cause unexpected damage to another. As a consequence, the CGL policy excludes "business risk," the mere inadequacy of the insured's work or products. That risk is borne by the insured alone.

Jeffrey E. Thomas and Francis J. Mootz, III, 3 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 16.02[3][a][vi][B] (LexisNexis 2023).

Grimberg is trying to do what these authorities warn against: it is trying to get coverage for "property damage to work done by [Grimberg] or its subcontractors." *J.L. Albrittain*, 2020 WL 2297187, at *7. To that end, Grimberg might try to argue that it or its contractors damaged non-defective property during construction. But that argument would run headlong into

Exclusion (j)(5), which excludes damage to "[t]hat particular part of real property on which [your] subcontractors … are performing operations." Or Grimberg might argue that some other of its work was rendered defective by the ICF wall defects. But that too would be excluded under Exclusion (j)(6) as "property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." There is simply no way for Grimberg to reinterpret or reimagine its own ordinary business risk, excluded under these business-risk exclusions, to find coverage. *See generally* Allan D. Windt, 3 INSURANCE CLAIMS AND DISPUTES § 11:10 (6th ed. Feb. 2023) (explaining differences between excluded business risks and covered occurrences).

## VI.    XL Specialty and XL America denied Grimberg's claim in good faith.

Despite all this, Grimberg claims "breaches [of the insurers'] implied duty of good faith and fair dealing." Compl. ¶¶ 59–66. Grimberg gets just about everything about this claim wrong.

*First*, just as Maryland law governs interpretation of the policies, Maryland law governs Grimberg's bad-faith claims. *Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*, 636 F. Supp. 2d 481, 488, n. 6 (D. Md. 2009) (Motz, J.). Under Maryland law, there is no common-law claim for bad-faith insurance adjusting. *Harris v. Keystone Ins. Co.*, No. 1:13-cv-2839, 2013 WL 6198160, at *2 (D. Md. Nov. 26, 2013); *Johnson v. Federal Kemper Ins. Co.*, 74 Md. App. 243, 246-47 (1988), *cert. denied*, 313 Md. 8 (1988). Grimberg's exclusive remedy is statutory, Md. Code Ann., Ins. § 27-1001, and Grimberg has pleaded no such claim.

*Second*, if there is no coverage, then there is no bad-faith liability. Md. Code Ann., Cts. & Jud. Proc. § 3-1701 (cause of action statute for obligations under Md. Code Ann., Ins. § 27-1001). "[A] civil action under section 3–1701 only allows recovery of actual damages under the insurance policy, and no actual damages under an insurance policy can be claimed by one who is not entitled to coverage under the policy." *All Class Constr., LLC v. Mut. Benefit Ins.*, 3 F. Supp. 3d 409, 417 (D. Md. 2014); *see also Cecilia Schwaber*, 636 F. Supp. 2d at 488, n. 6. If

Counts I and II fail, then so does Count III. Virginia law provides the same result. *See generally Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 261 F. Supp. 3d 680 (E.D. Va. 2017); *Florists' Mut. Ins. Co. v. Tatterson*, 802 F. Supp. 1426, 1437 (E.D. Va. 1992) ("for there to be a bad faith claim, there must be some bad faith that in some way impaired the ability of the insured to receive the benefits of the insurance contract causing the plaintiff damages.").

*Third*, Grimberg does not allege facts that justify an inference of bad-faith claim handling. Consider paragraph 46, where Grimberg lists its grievances against XL Specialty:

- Grimberg alleges that XL Specialty denied coverage based on lack of an occurrence which, as set out above, was correct.

- Grimberg then chides XL Specialty for not "cit[ing] any cases" and "cho[osing] to ignore numerous Virginia cases." Because Virginia law does not govern the Excess Policies, this again reflected good-faith claim adjusting.

- Grimberg then lists the exclusions XL Specialty invoked, including the business-risk exclusions. For the reasons above, that was consistent with good-faith claim adjusting.

- Last, Grimberg chides XL Specialty for invoking the "'your product' exclusion," because "Grimberg's claim does not involve a product." But Grimberg's complaint describes the potentially applicable products: "materials that have been stored by Grimberg and other subcontractors while the demolition and reconstruction work was taking place." Compl. ¶ 28.

None of these allegations creates a reasonable inference that XL Specialty lacked good faith when it denied Grimberg's claim.

The same goes for XL America. In paragraph 47, Grimberg tries to mock XL America for declining coverage based on Old Republic's initial declination: "Under XL Specialty and XL America's interpretation, a denial of coverage by a primary insurer or underlying insurer forfeits coverage for the insured under umbrella or excess coverage in the same year." But these are follow-form policies; if there is no coverage under the Old Republic policy, then there is no coverage under the follow-form excess policy. *See supra* § I. So it makes perfect sense that XL America would deny coverage based on Old Republic's denial.

In sum, Grimberg (i) wrongly assumed Virginia law governs the insurers' obligations; (ii) has no common-law cause of action under applicable law; and (iii) has not plausibly pled that XL Specialty or XL America failed to adjust Grimberg's claim in good faith. Count III should be dismissed.

## CONCLUSION

For these reasons, this Court should dismiss this action with prejudice.

**XL INSURANCE AMERICA, INC.**
**XL SPECIALTY INSURANCE COMPANY**

By: */s/ Thomas S. Garrett*
Thomas S. Garrett (VSB No: 73790)
HARMAN CLAYTOR CORRIGAN &
WELLMAN, P.C.
P.O. Box 70280
Richmond, VA 23255
Phone:      (804) 747-5200
Fax:          (804) 747-6085
tgarrett@hccw.com

Of counsel (*pro hac vice* forthcoming):

Ezra S. Gollogly
Joseph Dudek
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax:     (410) 539-1269
egollogly@kg-law.com
jdudek@kg-law.com

# CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Zahra S. Abrams, Esq.
Arnie B. Mason, Esq.
Williams Mullen
8350 Broad Street, Suite 1600
Tysons, VA 22102
zabrams@williamsmullen.com
amason@williamsmullen.com

/s/ *Thomas S. Garrett*
Thomas S. Garrett (VSB No. 73790)
Harman Claytor Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
tgarrett@hccw.com