**EXHIBIT D**



XL Insurance

**EXHIBIT D**

## NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation**:  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT D

NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The XL Catlin insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

**Our Privacy Promise**

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the XL Catlin insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

**Collection and Sources of Information**

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:
- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;

PN CW 02 1015

Page 1 of 3

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

## NOTICE TO POLICYHOLDERS

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

### Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

### Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

### Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

### Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

## NOTICE TO POLICYHOLDERS

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to the impact of U.S. Trade Sanctions[1].  Please read this Policyholder Notice carefully.

In accordance with the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") regulations, or any other U.S. Trade Sanctions applied by any regulatory body, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law, is a Specially Designated National and Blocked Person ("SDN"), or is owned or controlled by an SDN, this insurance will be considered a blocked or frozen contract. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC.  Other limitations on the premiums and payments also apply.

[1] "U.S Trade Sanctions" may be promulgated by Executive Order, act of Congress, regulations from the U.S. Departments of State, Treasury, or Commerce, regulations from the State Insurance Departments, etc.

PN CW 05 1017

©2017 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**EXHIBIT D**

### POLICYHOLDER DISCLOSURE
### NOTICE OF TERRORISM
### INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States —to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is **$743**, and does not include any charges for the portion of losses covered by the United States government under the Act.

PN161 01 15 T

© 2015 X.L. America, Inc.
Includes copyrighted material of National Association of Insurance Commissioners, with its permission.

**EXHIBIT D**





**Regulatory Office**
505 Eagleview Blvd. Suite 100
Dept: Regulatory
Exton, PA 19341-1120
Telephone 800-688-1840

**Issuing Company and Address**
**XL Specialty Insurance Company**
One World Financial Center
200 Liberty Street, 22nd Floor
New York, NY 10281

# Commercial Excess Follow Form and Umbrella Liability
# Policy Declarations

**Policy Number:**   US00063327LI18A          **Renewal of Number:**   US00063327LI17A

**ITEM 1.**   **INSURED NAME:**          John C. Grimberg Company, Inc.
            **ADDRESS:**            3200 Tower Oaks Blvd, Suite 300
            **CITY, STATE, ZIP:**   Rockville, MD 20852

**ITEM 2.**   **POLICY PERIOD:**

            Inception:     October 01, 2018          Expiration:     October 01, 2019
            (12:01 A.M. Standard Time at the address of the Named Insured stated above)

**ITEM 3.**   **LIMITS OF INSURANCE:**
            The Limits of Insurance, subject to the terms of this policy, are:

            $   25,000,000          Each Occurrence

            $   25,000,000          General Aggregate (In accordance with Section IV. Limits of Insurance)

            $   25,000,000          Products-Completed Operations Aggregate (In accordance with Section
                                    IV. Limits of Insurance)

            $   250,000            Disaster Response Limit (In accordance with Section IV. Limits of Insurance)

**ITEM 4.**   **SELF-INSURED RETENTION:**   $   10,000

                © 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

**ITEM 5.**    **UNDERLYING INSURANCE:**    See attached Schedule of Underlying Insurance.

| ITEM 6. | **POLICY PREMIUM:** | $ | 129,097 | Policy Premium |
|---------|---------------------|---|---------|----------------|
| | | $ | 743 | Premium for Certified Acts of Terrorism |
| | | $ | 129,840 | Total Policy Premium |
| | | $ | 129,840 | **Total Amount Due** |
| | | $ | 32,460 | **Minimum Premium Due** |

**ITEM 7.**    **FORMS ATTACHED TO THE POLICY AT ISSUANCE:** See attached Schedule of Forms and Endorsements.

**ITEM 8.**    **DISASTER RESPONSE EVENT PHONE NUMBER:**    **1-800-823-7351**    (to be called in the event of a disaster as per Section I. Insuring Agreements, Item C.)

**ITEM 9.**    **PRODUCER NAME:**    RCM&D
**ADDRESS:**    555 Fairmount Avenue
**CITY, STATE, ZIP:**    Baltimore, MD 21286-5497

**Date Issued:**    November 28, 2018

_____
Authorized Representative

          © 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____        _____
Joseph Tocco                            Toni Ann Perkins
President                               Secretary

IL MP 9104 0915 XLS
© 2015 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

**EXHIBIT D**

**ENDORSEMENT # 1**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SCHEDULE OF FORMS AND ENDORSEMENTS**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

Declarations Item 7 is completed to read as follows:

| Endorsement Number | Form Number | Form Title |
|---|---|---|
| 1 | XCU 301 0811 | Schedule of Forms and Endorsements |
| 2 | XCU 300 0217 | Schedule of Underlying Insurance |
| 3 | XCU 100-MD 0811 | Maryland Changes – Cancellation and Non-Renewal |
| 4 | XCU 445 0415 | Indiana Amendatory Endorsement - Definition of Pollutants (Applicable to Insuring Agreements A and B) |
| 5 | XCU 452 0217 | Amendment to Condition (I) Duties in the Event of an Occurrence, Claim or Suit (Applicable to Insuring Agreements A and B) |
| 6 | XCU 600 0811 | Abuse and Molestation Exclusion (Applicable to Insuring Agreements A and B) |
| 7 | XCU 629 0811 | Contractors Exclusion with Exception for Professional Services (Applicable to Insuring Agreements A and B) |
| 8 | XCU 635 0811 | Cross Claim Exclusion - Named Insured vs. Named Insured (Applicable to Insuring Agreements A and B) |
| 9 | XCU 639 0811 | Damage to Real and Personal Property Exclusion (Applicable to Insuring Agreement A) |
| 10 | XCU 652 0811 | Employee Benefits Liability Exclusion (Applicable to Insuring Agreement B) |
| 11 | XCU 654 0811 | Employers' Liability Exclusion (Applicable to Insuring Agreement B) |

 © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

| | | |
|---|---|---|
| 12 | XCU 659 0811 | Exterior Insulation and Finishing Systems Exclusion (Applicable to Insuring Agreements A and B) |
| 13 | XCU 670 0811 | Fungi or Bacteria Liability Exclusion (Applicable to Insuring Agreements A and B) |
| 14 | XCU 680 0811 | Lead Exclusion (Applicable to Insuring Agreements A and B) |
| 15 | XCU 734 0811 | Silica and Silica-Related Dust Exclusion (Applicable to Insuring Agreements A and B) |
| 16 | XCU 759 0513 | Liquor Liability Exclusion Applicable to Insuring Agreement B |
| 17 | XCU 763 1213 | Violation of Communication or Information Laws Exclusion (Applicable to Insuring Agreements A and B) |
| 18 | XCU 764 0514 | Access or Disclosure of Confidential or Personal Information and Data-Related Liability Exclusion (Applicable to Insuring Agreements A and B) |
| 19 | XCU 780 0717 | Aircraft Including Unmanned Aircraft Exclusion (Applicable to Insuring Agreements A and B) |
| 20 | XCU 901-MD 0415 | Maryland - Cap on Losses from Certified Acts of Terrorism with Retained Limit (Applicable to Insuring Agreements A and B) |

All other terms and conditions remain the same.

 © 2011 X.L. America, Inc.  All Rights Reserved. May not be copied without permission.

EXHIBIT D

## ENDORSEMENT # 2

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF UNDERLYING INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

Declarations Item 5. is completed to read as follows:

| | |
|---|---|
| Coverage: | **Commercial General Liability** |
| Insurer | Old Republic General Insurance Corporation |
| Policy Number: | A-3CG-926618-09 |
| Policy Period: | October 01, 2018 to October 01, 2019 |

$   1,000,000        Each Occurrence
$   2,000,000        General Aggregate
$   2,000,000        Products-Completed Operations Aggregate
$   1,000,000        Personal Injury & Advertising Injury
Defense expenses are in addition to the limits

| | |
|---|---|
| Coverage: | **Employee Benefits Liability** |
| Insurer | Old Republic General Insurance Corporation |
| Policy Number: | A-3CG-926618-09 |
| Policy Period: | October 01, 2018 to October 01, 2019 |

$   1,000,000        Each Employee
$   1,000,000        Aggregate
July 01, 2009        Retroactive Date
Defense expenses are in addition to the limits

| | |
|---|---|
| Coverage: | **Automobile Liability** |
| Insurer | Old Republic General Insurance Corporation |
| Policy Number: | A-3CA-926618-09 |
| Policy Period: | October 01, 2018 to October 01, 2019 |

$   1,000,000        Combined Single Limit
Defense expenses are in addition to the limits

| | |
|---|---|
| Coverage: | **Employer's Liability** |
| Insurer | Old Republic General Insurance Corporation |
| Policy Number: | A-3CW-068318-10 |
| Policy Period: | October 01, 2018 to October 01, 2019 |

$   1,000,000        Bodily Injury by Accident / Each Accident
$   1,000,000        Bodily Injury by Disease / Each Employee
$   1,000,000        Bodily Injury by Disease / Policy Limit
Defense expenses are in addition to the limits

All other terms and conditions remain the same.

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# COMMERCIAL EXCESS FOLLOW FORM
# AND UMBRELLA LIABILITY POLICY

### TABLE OF CONTENTS

<u>Beginning on Page</u>

| | | |
|---|---|---|
| I. | Insuring Agreements | 2 |
| | (A) Insuring Agreement A - Excess Follow Form Liability | 2 |
| | (B) Insuring Agreement B - Umbrella Liability Over Self-insured Retention | 2 |
| | (C) Insuring Agreement C - Disaster Response Coverage | 3 |
| II. | Who Is An Insured | 4 |
| III. | Defense And Settlement | 5 |
| IV. | Limits Of Insurance | 6 |
| V. | Exclusions | 7 |
| | (A) Exclusions Applicable to Insuring Agreements A and B | 7 |
| | (B) Exclusions Applicable to Insuring Agreement A Only | 9 |
| | (C) Exclusions Applicable to Insuring Agreement B Only | 11 |
| VI. | Definitions | 14 |
| VII. | Conditions | 21 |

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

## COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS, DUTIES AND WHAT IS AND WHAT IS NOT COVERED.

THIS POLICY IS INCOMPLETE UNLESS THE DECLARATIONS AND ALL APPLICABLE FORMS AND ENDORSEMENTS ARE ATTACHED.

THROUGHOUT THIS POLICY THE WORDS "YOU" AND "YOUR" REFER TO THE **NAMED INSURED** SHOWN IN DECLARATIONS ITEM 1 AND ANY OTHER PERSON OR ORGANIZATION QUALIFYING AS A **NAMED INSURED** UNDER THIS POLICY.   THE WORDS "WE", "US", AND "OUR" REFER TO THE COMPANY PROVIDING THIS INSURANCE.

WORDS AND PHRASES THAT APPEAR IN **BOLD** HAVE SPECIAL MEANING AND ARE DEFINED IN SECTION VI - DEFINITIONS.


I.      **INSURING AGREEMENTS**

In consideration of the payment of premium, and subject to the terms, definitions, conditions and limitations of this policy, including any endorsements or amendments thereto, we agree with the **named insured** as follows:

(A)     **Insuring Agreement A - Excess Follow Form Liability**

(1)     We will pay on behalf of the **insured**, subject to Section IV. Limits of Insurance, those amounts the **insured** becomes legally obligated to pay as damages in excess of the **scheduled underlying insurance** as a result of a **claim** covered by the **scheduled underlying insurance**, but only if the **scheduled underlying insurance** has been exhausted by the actual payment of **loss** to which this policy applies.

(2)     Coverage under this Insuring Agreement A shall follow the terms, definitions, conditions and limitations of the **scheduled underlying insurance,** subject to the **policy period**, Limits of Insurance, premium, and any contrary provisions contained in this policy.

However, this Insuring Agreement A will not apply to any **disaster response expense** as described in Insuring Agreement C, even if such insurance is covered by the **scheduled underlying insurance** or would have been but for the exhaustion of the **scheduled underlying insurance.**

(3)     If we are prevented by law or statute from making payment on the **insured's** behalf under Insuring Agreement A, we will indemnify the **insured** for those sums otherwise payable hereunder.


(B)     **Insuring Agreement B - Umbrella Liability Over Self-insured Retention**

(1)     We will pay on behalf of the **insured**, subject to Section IV. Limits of Insurance, those amounts not covered by the **scheduled underlying insurance** that the **insured** becomes legally obligated to pay as damages in excess of the **self-insured retention** because of **bodily injury**, **property damage** (including liability assumed by the **insured** under an **insured contract**) or **personal and advertising injury** taking place anywhere in the world and caused by an **occurrence** during the **policy period**.

(2)     The coverage provided by Insuring Agreement B will not apply to damages that would have been covered by the **scheduled underlying insurance** but for its exhaustion by the payment of **loss.**

     © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(3)     The coverage provided by Insuring Agreement B will not apply to any damages covered by Insuring Agreement A, or arising out of subjects of insurance or exposures to **loss** for which this policy requires the **scheduled underlying insurance** to be maintained.

(4)     If we are prevented by law or statute from making payment on the **insured's** behalf under Insuring Agreement B, we will indemnify the **insured** for those sums otherwise payable hereunder.

We will make payment on behalf of the **insured** under Insuring Agreements A and B only if:

(1)     Prior to the **policy period**, no **insured** listed under Section II. Who Is An Insured, (B)(1), (6), (7), (8), (9) or (10); no manager in your risk management, insurance or legal department; and no **employee** authorized by you to give or receive notice of an **occurrence**, **claim** or **suit**; knew, prior to the **policy period**, that the **bodily injury** or **property damage** had occurred, in whole or in part, or of the existence of any **occurrence** that caused **personal and advertising injury**; or

(2)     During the **policy period**, no **insured** listed under Section II. Who is An Insured, (B) (1),(6), (7), (8), (9) or (10); no manager in your risk management, insurance or legal department; and no **employee** authorized by you to give or receive notice of an **occurrence**, **claim** or **suit**; knew during the **policy period**, that the **bodily injury** or **property damage** had occurred, in whole or in part , or of the existence of any **occurrence** that caused **personal and advertising** injury, prior to the **policy period**.

For these purposes, **bodily injury**, **property damage**, and **personal and advertising injury**, including the continuation, change or resumption of such **bodily injury**, **property damage**, or **personal and advertising injury**, will be deemed to have been known at the earliest time when any of the above-referenced individuals:

(1)     Reports all or any part of the **bodily injury**, **property damage**, or **personal and advertising injury** to us or any other insurer;

(2)     Receives a **claim** because of the **bodily injury**, **property damage**, or **personal and advertising injury**; or

(3)     Becomes aware by any other means that **bodily injury** or **property damage** has occurred or has begun to have occurred, or an **occurrence** has been committed that has caused or may cause **personal and advertising injury**.

(C)     **Insuring Agreement C - Disaster Response Coverage**

(1)     We will indemnify the **insured** for **disaster response expenses** resulting from a **disaster event** occurring during the **policy period**, provided:

(a)     a **disaster response advisor** has been hired in connection with the **disaster event**; and

(b)     a **disaster event** is reported to us at the number indicated in Declarations Item 8 within twenty-four (24) hours of its commencement.

(2)     A **disaster event** will be deemed to commence when a **key executive** first becomes aware of a **disaster event**. A **disaster event** will be deemed to end when:

(a)     we determine that any one of the elements listed in the definition of **disaster event** no longer exists; or

(b)     the Disaster Response Expense Aggregate Limit listed in Declarations Item 3 has been exhausted,

whichever is earlier.

 © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

**EXHIBIT D**

(3)    If we and the **insured** disagree on whether a **disaster event** has occurred, the **insured's** right of reimbursement under Insuring Agreement C shall be arbitrated pursuant to the rules of the American Arbitration Association for the state shown in Declarations Item 1.

(4)    Payment by us of **disaster response expenses** will not determine or be evidence of our rights or obligations under Insuring Agreement A or B.

(5)    Payment by us of **disaster response expenses** will not oblige us to assume any duty to control the investigation, settlement or defense of any **claim** or **suit** that might arise from a covered **disaster event**.

## II.    WHO IS AN INSURED

(A)    The following are **insureds** under Insuring Agreement A:

(1)    The **named insured**.

(2)    Any person or organization qualifying as an **insured** under the **scheduled underlying insurance**, but for no broader coverage than would be afforded to such person or organization by the **scheduled underlying insurance**.

(B)    The following are **insureds** under Insuring Agreements B and C:

(1)    The **named insured**.

(2)    Any person or organization, other than an **employee** or **volunteer worker**, while such person or organization is acting as your real estate manager.

(3)    Your legal representative if you die, but only with respect to his or her duties as such.

(4)    Your **employees**, but only for acts within the scope of their employment by you, or while performing duties related to the conduct of your business.

(5)    Your **volunteer workers**, but only while performing duties related to the conduct of your business.

(6)    If you are designated in the Declarations as an individual, then your spouse, but only with respect to the conduct of a business of which you are the sole owner.

(7)    If you are designated in the Declarations as a partnership or joint venture, your partners and their spouses, but only with respect to the conduct of your business.

(8)    If you are designated in the Declarations as a limited liability company, your members, but only with respect to the conduct of your business, and your managers, but only with respect to their duties as such.

(9)    If you are designated in the Declarations as an organization other than a partnership, joint venture or limited liability company, your executive officers and directors, but only with respect to their duties as such.  Your stockholders are also **insureds**, but only with respect to their liability as stockholders.

(10)    If you are designated in the Declarations as a trust, your trustees, but only with respect to their duties as such.

(11)    Any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(12)     A partnership, joint venture or limited liability company that you acquire or form during the **policy period**, but only if we have named such partnership, joint venture or limited liability company as an **insured** on a written endorsement that is made part of this policy.

## III.    DEFENSE AND SETTLEMENT

(A)     We will have the right and duty to defend any **suit** covered by Insuring Agreement A, but only when the **scheduled underlying insurance** or **other insurance** has been exhausted by payment of **loss** to which this policy applies.

(B)     We will have the right and the duty to defend any **suit** covered by Insuring Agreement B, but only when such **suit** seeks damages because of **bodily injury, property damage**, or **personal and advertising injury** that are not covered by the **scheduled underlying insurance** or by **other insurance**.

(C)     When we assume the defense of any **suit** under Paragraph (A) or (B) above, we will have the right to investigate, defend and settle such **suit** as we deem appropriate.  We will defend any such **suit** even if it is groundless, false or fraudulent.  We also will pay the following supplementary payments in connection with any **suit** we defend, but only if such supplementary payments are not covered by the **scheduled underlying insurance** or any **other insurance**:

(1)     Premiums on appeal bonds or bonds to release attachments, subject to the applicable Limits of Insurance set forth in the Declarations, provided that we will not be obligated to apply for or furnish any such bond.

(2)     All costs taxed against an **insured** in connection with the **suit**.

(3)     Pre-judgment interest awarded against the **insured** on that part of any judgment paid under this policy, but only such interest as shall accrue before we make a settlement offer within the policy's applicable Limits of Insurance.

(4)     Post-judgment interest that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court, that part of the judgment that is within this policy's applicable Limits of Insurance.

(5)     Reasonable expenses incurred by an **insured** at our request or with our consent.

(D)     We will have no duty to defend, investigate, pay or settle, or continue to defend, investigate, pay or settle, a **suit** after the applicable Limits of Insurance set forth in the Declarations have been exhausted by the payment of **loss**; in which case we will have the right to withdraw and discontinue our investigation or defense of such **suit**.

(E)     We will have no duty to defend the **insured** against any **suit** seeking damages to which this insurance does not apply.

(F)     If we are prevented by law or statute from assuming our defense obligations under Paragraph (A) or (B), we will pay any expenses incurred by you with our consent in connection with the defense of a **suit** otherwise covered by that section.

(G)     Except as otherwise provided in this Section III. Defense and Settlement, we shall have no duty to defend any **suit** against an **insured**.  We, however, will have the right, but not the duty, to associate with you in the investigation, settlement or defense of any **claim** or **suit** to which this policy applies, in which case the **insured** will cooperate with us and make available all information and records we reasonably require.  We will exercise our right to associate at our expense.

## IV.    LIMITS OF INSURANCE

(A)    The Limits of Insurance shown in Declarations Item 3 are the most we will pay for all damages under this policy regardless of the number of **insureds**, **claims** made, **suits** brought, persons or organizations making **claims** or bringing **suits**, or coverages provided by this policy.

(B)    Subject to this policy's Limits of Insurance, we will pay only that amount of **loss** that is in excess of the **retained limit**.

(C)    The amount shown in Declarations Item 3 for the General Aggregate Limit is the most we will pay for all **loss**, other than:

   (1)    **Loss** covered in the **scheduled underlying insurance** to which no underlying aggregate limit applies; or

   (2)    **Loss** included in the **products-completed operations hazard**.

   However, with respect to Insuring Agreement A only, if a policy shown in the **scheduled underlying insurance** has aggregate limits, other than the **products-completed operations hazard** aggregate limits, then the General Aggregate Limit as shown in Declarations Item 3 will apply in the same manner as the aggregate limits shown in each policy listed in the **scheduled underlying insurance**, but will be no broader.

(D)    The amount shown in Declarations Item 3 for the Products-Completed Operations Aggregate Limit is the most we will pay for all **loss** included in the **products-completed operations hazard**.

(E)    Subject to Paragraphs (C) and (D) above, the Each Occurrence Limit shown in Declarations Item 3 is the most we will pay for all **loss** arising out of any one **occurrence.**

(F)    The amount shown in Declarations Item 3 for the Disaster Response Expense Aggregate Limit is the most we will pay for all **disaster response expenses** incurred during the **policy period**.  This Disaster Response Expense Aggregate Limit is in addition to and does not reduce any other Limit of Insurance applicable to this policy.

(G)    If the limits for any **scheduled underlying insurance** policy are:

   (1)    Greater than the amount shown in the Schedule of Underlying Insurance, this policy will apply in excess of the greater amount.

   (2)    Less than the amount shown in the Schedule of Underlying Insurance, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance and any **other insurance** that is applicable and collectible.

(H)    Expenses we incur to defend any **suit** or investigate any **claim** will be in addition to the policy's applicable Limits of Insurance unless such expenses reduce the limits of the **scheduled underlying insurance**, in which case such expenses will reduce this policy's available Limits of Insurance.

(I)    If the total applicable limits of the **scheduled underlying insurance** are reduced or exhausted by the actual payment of **loss** to which this policy applies, this policy shall:

   (1)    In the event of reduction, pay in excess of the sum of any remaining total applicable limits of the **scheduled underlying insurance** and any applicable and collectible **other insurance**.

   (2)    In the event of exhaustion of the total applicable limits of **scheduled underlying insurance** and any applicable and collectible **other insurance,** continue in force subject to the terms and conditions of this policy.

              © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(J)     If the limits of the **scheduled underlying insurance** are not collectible for any reason other than reduction or exhaustion by the payment of **loss**, our obligations will not be increased and we will pay on your behalf only those amounts in excess of the limits of the **scheduled underlying insurance**.

(K)     We will not make any payment under this policy unless and until:

(1)     The total applicable limits of **scheduled underlying insurance** or any **other insurance** have been exhausted by the payment of **loss** to which this policy applies; or

(2)     The total applicable **self-insured retention** has been satisfied by the payment of **loss** to which this policy applies.

(L)     When the amount of **loss** has finally been determined by an agreed settlement or a final judgment, we will promptly pay on your behalf the amount of such **loss** within this policy's applicable Limits of Insurance.

(M)     The policy's Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the policy's inception date shown in the Declarations.  If the **policy period** is extended for a period of less than twelve (12) months, the extended period will be deemed part of the immediately preceding **policy period**.

## V.     EXCLUSIONS

(A)     **Exclusions Applicable to Insuring Agreements A and B:**

This insurance does not apply to:

(1)     **Asbestos**

(a)     The manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

(b)     Any obligation of the **insured** to indemnify a party because of damages arising out of, but not limited to, the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

(c)     Any obligation to defend any **suit** or **claim** against the **insured** that seeks damages, if such **suit** or **claim** arises out of, but not limited to, the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

(2)     **Employment Practices**

**Employment practices**, whether the **insured** may be liable as an employer or in any other capacity, and including any obligation to share damages with or repay another.

(3)     **ERISA**

A violation of the Employee Retirement Income Security Act of 1974 (ERISA), the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, all as may be amended, or any similar federal, state or local statutory or common law, or any rules or regulations promulgated thereunder.

(4)     **Intangible Property**

The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate or process intangible property. For the purpose of this exclusion, intangible property includes **electronic data**.

(5)     **No-Fault, Uninsured Motorist or Underinsured Motorist Laws**

Any obligation of the insured under any no fault, uninsured or underinsured motorist law, or any similar law.

(6)     **Nuclear Liability**

To **injury or damage**:

(a)     With respect to which an **insured** is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, the American Nuclear Insurers, Mutual Atomic Energy Liability Underwriters, or the Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

(b)     Resulting from the **hazardous properties** of **nuclear material** and with respect to which: (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any amendments thereto; or (ii) the **insured** is, or but for this policy would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization.

(c)     Resulting from **hazardous properties** of **nuclear material** if:

(i)     The **nuclear material** is at any **nuclear facility** owned or operated by or on behalf of an **insured** or has been discharged or dispersed therefrom.

(ii)     The **nuclear material** is contained in **spent fuel** or **waste** that was at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an **insured**.

(iii)     The **injury or damage** or **personal and advertising injury** arises out of an **insured's** furnishing services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **nuclear facility**. If such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (iii) applies only to **property damage** to such **nuclear facility** and any property therein.

(7)     **Product Recall**

The loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of **your product, your work**, or **impaired property**, if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(8)     **Securities**

(a)     A violation of any securities law or similar law, or any regulation promulgated thereunder;

(b)     The purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit, or financial interest or instrument;

 © 2011 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

      (c)     Any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

      (d)     The depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

(9)    **Violation of Communication or Information Laws**

Any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment thereto, that prohibits or limits the sending, transmitting or communicating of material or information.

(10)    **War**

War (whether declared or not), invasion, hostilities, civil war, rebellion, revolution, insurrection, military or usurped power, strike, riot or civil insurrection.

(11)    **Workers' Compensation and Similar Laws**

Any obligation of the **insured** under any workers' compensation, disability benefits, unemployment compensation law, or any similar law.

(B)    **Exclusions Applicable to Insuring Agreement A Only:**

This insurance does not apply to:

(1)    **Pollution**

      (a)     The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

           (i)     At or from any premises, site or location that is or was at any time owned, used, occupied by, or rented or loaned to an **insured**.

           (ii)     At or from any premises, site or location that is or was at any time used for the handling, storage, disposal, processing or treatment of waste.

           (iii)     That are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for an **insured** or any person or organization for whom the **insured** may be legally responsible.

           (iv)     At or from any premises, site or location on which an **insured** or any contractors or subcontractors working directly or indirectly on an **insured's** behalf are performing operations if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor.

           (v)     At or from any premises, site or location on which an **insured** or any contractors or subcontractors working directly or indirectly on an **insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of **pollutants**.

(vi)    That are contained in any property that is:

(1)    Being transported, towed by, handled, or handled for movement into, onto or from, an **auto** covered by the **scheduled underlying insurance**.

(2)    In the course of transit by or on behalf of an **insured.**

(3)    Being stored, disposed of, treated, or processed in or upon an **auto** covered by this policy or **scheduled underlying insurance**.

(vii)   Before the **pollutants,** or any property in which the **pollutants** are contained, are moved from the place where they are accepted by the **insured** for movement into or onto an **auto** covered by **scheduled underlying insurance**; or

(viii)  After the **pollutants** or any property in which the **pollutants** are contained are moved from an **auto** covered by this policy or the **scheduled underlying insurance** to the place where they are finally delivered, disposed of or abandoned by the **insured**.

(b)    Any **loss**, cost or expense arising out of:

(i)    A request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**.

(ii)   A **claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

The following exceptions apply to Exclusion (B)(1), but only if an otherwise covered **claim** or **suit** also is covered by the **scheduled underlying insurance**:

(1)    Paragraphs (1)(a)(i) through (1)(a)(v) do not apply to **bodily injury** or **property damage** included within the **products-completed operations hazard** if **your product** or **your work** has not at any time been discarded, dumped, abandoned, thrown away, treated or handled as waste by anyone.

(2)    Paragraphs (1)(a)(i) and (1)(a)(iv) do not apply with respect to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire**.

(3)    Paragraph (1)(a)(i) does not apply to:

(a)    **Bodily injury** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building or equipment that is used to heat water for personal use, by the building's occupants or their guests.

(b)    **Bodily injury** or **property damage** for which an **insured** may be held liable if the **insured** is a contractor and the owner or lessee of a premises, site or location has been added to the policy as an additional insured with respect to the **insured's** ongoing operations performed for that additional insured at such premises, site or location; and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **insured** other than that additional insured.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(4)     Paragraph (1)(a)(iv) does not apply to:

(a)     **Bodily injury** or **property damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor.

(b)     **Bodily injury** or **property damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by the **insured** or on the **insured's** behalf by a contractor or subcontractor.

(5)     Paragraph (1)(a)(vi) does not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **auto** or its parts covered by the **scheduled underlying insurance** if:

(a)     The **pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and

(b)     The **bodily injury** or **property damage** does not arise out of the operation of any equipment listed in Subparagraphs (7)(b) and (c) of the definition of **mobile equipment**.

(6)     Paragraph (1)(a)(vii) does not apply to **occurrences** that take place away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **auto** covered by **scheduled underlying insurance** if:

(a)     The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an auto covered by scheduled underlying insurance; and

(b)     The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage.

(C)     **Exclusions Applicable to Insuring Agreement B Only:**

This insurance does not apply to:

(1)     **Aircraft, Auto or Watercraft**

**Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **auto** or watercraft owned or operated by or rented or loaned to any **insured.**  The term "use" shall include operation, loading and unloading. This exclusion applies even if the **claims** against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others.

(2)     **Contractual Liability**

**Bodily injury**, **property damage**, or **personal and advertising injury** for which the **insured** is obligated to pay by reason of assumption of liability in a contract or agreement.

(3)     Damage to Impaired Property

**Property damage** to **impaired property** or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or a delay or failure by the **insured** or anyone acting on the **insured's** behalf to perform a contract or agreement in accordance with its terms.  This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

(4)     **Damage to Real and Personal Property**

**Property damage** to:

(a)     Property the **insured** owns, rents, or occupies, including any costs or expenses incurred by the **insured** or another person, organization or entity, for the repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

(b)     Premises the **insured** sells, gives away, or abandons, if the **property damage** arises out of any part of those premises.

(c)     Property loaned to the **insured**.

(d)     Personal property in the **insured's** care, custody or control.

(e)     That particular part of real property on which the **insured** or any contractors or subcontractors working directly or indirectly on the **insured's** behalf are performing operations, if the **property damage** arises out of those operations.

(f)     That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

(5)     **Damage to Your Product**

**Property damage** to **your product** arising out of it or any part of it.

(6)     **Damage to Your Work**

**Property damage** to **your work**, arising out of it or any part of it, and included in the **products-completed operations hazard**.

(7)     **Employee Injury**

**Bodily injury** to an **employee** of the **insured** arising out of and in the course of employment by the **insured** or performing duties related to the conduct of the **insured's** business; or any injury to the spouse, domestic partner, child, parent, brother or sister of that **employee** as a consequence of **bodily injury** to an **employee**.  This exclusion applies whether the **insured** may be liable as an employer or in any other capacity, including an obligation to share damages with or repay another who must pay damages because of injury.

     © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(8)    **Employees and Volunteer Workers**

To the liability of any **employee** or **volunteer worker** arising out of **bodily injury**, **property damage**, or **personal and advertising injury**:

(a)    To the **insured**, its partners, members, **employees** or **volunteer workers**.

(b)    To the spouse, child, parent, brother, sister of a person identified in Paragraph (8)(a) above.

(c)    Arising out of the providing or failing to provide professional health care services.

(9)    **Expected or Intended**

**Bodily injury** or **property damage** expected or intended from the standpoint of the **insured**. However, this exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force by the **insured** to protect persons or property.

(10)    **Liquor Liability**

**Bodily injury** or **property damage** for which the **insured** may be held liable by reason of:

(a)    Causing or contributing to the intoxication of any person.

(b)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol.

(c)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

(11)    **Personal and Advertising Injury**

**Personal and advertising injury:**

(a)    Caused by or at the direction of the **insured** with the knowledge that the act would violate the rights of another and would inflict **personal and advertising injury**.

(b)    Arising out of oral or written publication of material by or at the direction of the **insured** with knowledge of its falsity.

(c)    Arising out of oral or written publication of material whose first publication took place prior to the **policy period**.

(d)    Arising out of a criminal act committed by or at the direction of an **insured**.

(e)    For which the **insured** has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

(f)    Arising out of a breach of an expressed contract to use another's advertising idea in the **insured's advertisement**.

(g)    Arising out of the failure of goods, products or services to conform to any statement of quality or performance made in the **insured's advertisement**.

                © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(h)    Arising out of the wrong description of the price of goods, products or services stated in the **insured's advertisement**.

(i)    Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  However, this exclusion does not apply to infringement of copyright, trade dress or slogan in your **advertisement.**

(j)    Committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting; designing or determining content of websites for others; or an Internet search, access, content or service provider.

    However, this exclusion does not apply to Paragraphs (DD) (1), (2), and (3) of the definition of **personal and advertising injury**.  For the purposes of this exclusion, the placing of frames, borders or links, or advertising for the **insured** or others anywhere on the Internet is not by itself considered the business of advertising, broadcasting, publishing or telecasting.

(k)    Arising out of an electronic chat room or bulletin board the **insured** hosts, owns, or over which the **insured** exercises control.

(l)    Arising out of the unauthorized use of another's name, likeness, trade dress, slogan, style of doing business, or product in the **insured's** e-mail address, domain name, web page or Internet domain, or metatag, or any other similar tactics to mislead another's potential customers.

(12)  **Pollution**

(a)    The actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**.

(b)    Any request, demand, order or statutory or regulatory requirement that the **insured** or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

(c)    Any **claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

## VI.   DEFINITIONS

The following definitions are applicable to Insuring Agreements B and C, and, to the extent the following terms are not defined in the **scheduled underlying insurance**, to Insuring Agreement A.

(A)   **Advertisement** means a notice that is broadcast or published to the general public or specific market segments about the **insured's** goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition, notices that are published include material placed on the Internet or on similar electronic means of communication; and regarding websites, only that part of a website that is about the **insured's** goods, products or services for the purposes of attracting customers or supporters is considered an **advertisement**.

(B)   **Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment, or any other land vehicle, that is subject to a compulsory or financial responsibility law or other motor insurance law in the state where it is licensed or principally garaged.  **Auto** does not include **mobile equipment**.

(C)　**Bodily injury** means injury to the human body, illness, sickness or disease sustained by a person, including mental anguish, mental injury or death resulting from any of these at any time.

(D)　**By-product material** has the meaning given it in the Atomic Energy Act of 1954 or any law amendatory thereof.

(E)　**Claim** means an express demand for damages, including a **suit**, resulting from an **occurrence** covered by this policy.

(F)　**Disaster event** means an **occurrence** that, in the good faith and reasonable opinion of a **key executive**, has resulted in or is likely to result in all of the following: (1) a **claim** for damages that is likely to exceed the **retained limit**; (2) significant media coverage; and (3) a need for a **disaster response advisor**.

(G)　**Disaster response advisor** means a public relations firm or crisis management firm that is hired by the **insured** to perform **disaster response advisory services** in connection with a **disaster event**.

(H)　**Disaster response advisory services** are those services performed by a **disaster response advisor** in advising the **insured** on minimizing potential harm from a covered **disaster event** by maintaining or restoring public confidence in the **insured**.

(I)　**Disaster response expenses** are those amounts paid for the reasonable and necessary fees and expenses incurred by the **insured** or their **disaster response advisor** and pre-approved by us, including but not limited to medical expenses, funeral expenses, psychological counseling expenses, travel expenses, temporary living expenses, printing and mailing expenses and expenses to secure the scene of a **disaster event**.

(J)　**Electronic data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically-controlled equipment.

(K)　**Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

(L)　**Employment practices** means:

　　(1)　Failure to hire any prospective **employee** or any applicant for employment.

　　(2)　Dismissal, discharge or termination of any **employee**.

　　(3)　Failure to promote or advance any **employee**.

　　(4)　Employment-related practices, policies, acts, omissions or misrepresentations directed at a present, past, future or prospective **employee**, including but not limited to:

　　　　(a)　Coercion, harassment, humiliation or discrimination.

　　　　(b)　Demotion, evaluation, reassignment, discipline, or retaliation.

　　　　(c)　Libel, slander, humiliation, defamation, or invasion of privacy.

　　　　(d)　Violation of civil rights.

(M)　**First named insured** means the **insured** first identified in Declarations Item 1.

(N)　**Hazardous properties** include, but are not limited to, radioactive, toxic or explosive properties.

 © 2011 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(O)    **Hostile fire** means a fire that becomes uncontrollable or breaks out from where it was intended to be.

(P)    **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because

(1)    It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

(2)    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

(1)    The repair, replacement, adjustment or removal of **your product** or **your work**; or

(2)    Your fulfilling the terms of the contract or agreement**.**

(Q)    **Injury or damage**, as used in the Nuclear Energy Liability Exclusion of this policy, includes all forms of radioactive contamination of property.

(R)    **Insured** means any person or organization qualifying as such under Section II. Who is An Insured of this policy.

(S)    **Insured contract** means:

(1)    A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an **insured contract**.

(2)    A sidetrack agreement.

(3)    An easement or license agreement, except in connection with construction or demolition operations on or within fifty (50) feet of a railroad.

(4)    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality.

(5)    An elevator maintenance agreement.

(6)    That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or your **employees**, of any **auto**.  However, such contract or agreement shall not be considered an **insured contract** to the extent it obligates you or any of your **employees** to pay for **property damage** to any **auto** rented or leased by you or any of your **employees**.

(7)    That part of any other contract or agreement pertaining to your business (including the indemnification of a municipality in connection with work performed for such municipality) under which you assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization.  "Tort liability" means a liability that would be imposed by law in the absence of any contract or agreement.

Subparagraphs (6) and (7) above do not include that part of any contract or agreement:

(a)     That pertains to the loan, lease, or rental of an **auto** to the **insured** or any of its **employees**, if the **auto** is loaned, leased or rented with a driver.

(b)     That holds harmless a person or organization that is engaged in the business of transporting property by **auto** for hire in connection with the **insured's** use of an **auto**, covered by the **scheduled underlying insurance**, over a route or territory that person or organization is authorized to serve by public authority.

(c)     That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within fifty (50) feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

(d)     That indemnifies an architect, engineer or surveyor in connection with preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or giving or failing to give directions or instructions.

(e)     Under which the **insured**, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the **insured's** rendering or failure to render professional services, including supervisory, inspection, architectural or engineering activities.

(T)     **Key executive** means the **insured's** Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel, general partner or sole proprietor.

(U)     **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  **Leased worker** does not include a **temporary worker**.

(V)     **Loss** means those sums you become legally obligated to pay as settlements or judgments in connection with a covered **claim**.  **Loss** shall include expenses incurred to investigate a **claim** or defend a **suit** if so provided in the **scheduled underlying insurance**.

(W)     **Mobile equipment** means any of the following types of land vehicles, including any machinery or equipment attached thereto that are not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where such vehicle is licensed or principally garaged, including:

(1)     Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads.

(2)     Vehicles maintained for use solely on or next to premises the **insured** owns or rents.

(3)     Vehicles that travel on crawler treads.

(4)     Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted power cranes, shovels, loaders, diggers or drills; or road construction or resurfacing equipment such as graders, scrapers or rollers.

(5)     Vehicles not described in Subparagraphs (1) through (4) above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(a)     Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(b)     Cherry pickers and similar devices used to raise or lower workers.

(6)     Vehicles not described in Subparagraphs (1) through (4) above that are maintained primarily for purposes other than the transportation of persons or cargo.

(7)     Self–propelled vehicles with the following types of permanently attached equipment are not **mobile equipment**, but will be considered **autos**:

    (a)     Equipment designed primarily for snow removal, road maintenance (other than construction or resurfacing) or street cleaning.

    (b)     Cherry pickers and similar devices mounted on **auto** or truck chassis and used to raise or lower workers.

    (c)     Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

(X)     **Named insured** means the person or entity identified in Declarations Item 1.

(Y)     **Nuclear facility** means:

(1)     A **nuclear reactor**.

(2)     Equipment or devices designed or used for (a) separating the isotopes of uranium or plutonium; (b) processing or utilizing **spent fuel**; or (c) handling, processing or packaging **waste**.

(3)     Equipment or devices used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the **insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(4)     Any structure, basin, excavation, premises or place prepared or used for storage or disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

(Z)     **Nuclear material** means **source material**, **special nuclear material** or **by-product material**.

(AA)    **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(BB)    **Occurrence** means:

(1)     With respect to **bodily injury** or **property damage**, an accident including continuous or repeated exposure to substantially the same general harmful conditions. All exposure to substantially the same general harmful conditions will be deemed to arise out of one **occurrence**.

(2)     With respect to **personal and advertising injury,** an offense, that results in **personal and advertising injury**. All damages that arise from the same, related or repeated injurious material or offense will be deemed to arise out of one **occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used, or the number of claimants.

(CC)  **Other insurance** means a policy of insurance providing coverage for damages to which this insurance also applies.  **Other insurance** also means any retention in an insurance policy other than this policy whereby a party other than an insurer is responsible for all or part of any sums payable.  **Other insurance** does not include:

    (1)  **Scheduled underlying insurance;**

    (2)  The **self-insured retention**; or

    (3)  Any policy of insurance specifically purchased to be excess of this policy and providing coverage also afforded by this policy.

(DD)  **Personal and advertising injury** means injury including consequential **bodily injury**, arising out of one or more of the following offenses:

    (1)  False arrest, detention or imprisonment.

    (2)  Malicious prosecution.

    (3)  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor.

    (4)  Oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services.

    (5)  Oral or written publication, in any manner, of material that violates a person's right of privacy.

    (6)  The use of another's advertising idea in the **insured's advertisement**.

    (7)  Infringing upon another's copyright, trade dress or slogan in the **insured's advertisement**.

(EE)  **Policy period** means the period of time from the inception date shown in Declarations Item 2 to the earlier of the expiration date shown in Declarations Item 2 or the date this policy terminates.

(FF)  **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  For purposes of this definition waste shall include materials to be recycled, reconditioned or reclaimed.

(GG)  **Products-completed operations hazard** means all **bodily injury** and **property damage** occurring away from premises the **insured** owns or rents and arising out of **your product** or **your work**, except products that are still in the **insured's** physical possession, or work that has not yet been completed or abandoned. However, **your work** will be deemed complete at the earliest of the following times:

    (1)  When all of the work called for in the **insured's** contract has been completed.

    (2)  When all of the work to be done at the job site has been completed if the contract calls for work at more than one job site.

    (3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete will be deemed to be completed.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

**Products-completed operations hazard** does not include **bodily injury** or **property damage** arising out of the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by the **insured** and that condition was created by the loading or unloading of that vehicle by any **insured**; or the existence of tools, uninstalled equipment or abandoned or unused materials.

(HH)   **Property damage** means physical injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the physical injury that caused it. For purposes of this insurance, **electronic data** is not tangible property.

(II)   **Retained limit** means, for Insuring Agreement A, the total applicable limits of the **scheduled underlying insurance** shown in Declarations Item 5 or the actual limits of such **scheduled underlying insurance**, whichever is greater; and, for Insuring Agreement B, the **self-insured retention**.

(JJ)   **Scheduled underlying insurance** means:

(1)   The policy or policies of insurance shown in the Schedule of Underlying Insurance forming a part of this policy; and

(2)   Any renewal or replacement of any policy identified in Subparagraph (1) above.

**Scheduled underlying insurance** does not include a policy of insurance specifically purchased to be excess of this policy.

(KK)   **Self-insured retention** means the dollar amount set forth in Declarations Item 4 that the **insured** must pay before we are responsible to make payment under Insuring Agreement B. The **self-insured retention** does not apply to **occurrences** that would have been covered by the **scheduled underlying insurance** but for the exhaustion of the applicable limits by the payment of **loss**.

(LL)   **Source material** has the meaning given it in the Atomic Energy Act of 1954 or any law amendatory thereof.

(MM)   **Special nuclear material** has the meaning given it in the Atomic Energy Act of 1954 or any law amendatory thereof.

(NN)   **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

(OO)   **Suit** means a civil proceeding in which damages because of **bodily injury**, **property damage**, or **personal and advertising injury** to which this policy applies are alleged, including:

(1)   An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with our consent.

(2)   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with our consent.

**Suit** does not include any injunction or order from a governmental agency or body requesting action from any **insured**.

(PP)   **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(QQ)   **Volunteer worker** means a person who is not your **employee** and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

(RR)   **Waste**, as used in the Nuclear Energy Liability Exclusion of this policy, means any waste material (i) containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and (ii) resulting from the operation by any person or organization of a **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

(SS)   **Your product** means:

   (1)   Any goods or products, other than real property, that are manufactured, sold, handled, distributed or disposed of by:

      (a)   You;

      (b)   Others trading under your name; or

      (c)   A person or organization whose business or assets you have acquired; and

   (2)   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **Your product** includes:

   (1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

   (2)   The providing of or failure to provide warnings or instructions.

   **Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

(TT)   **Your work** means
   (1)   Work or operations performed by you or on your behalf; and

   (2)   Materials, parts or equipment furnished in connection with such work or operations.

   **Your work** includes:

   (1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and

   (2)   The providing of or failure to provide warnings or instructions.

## VII.   CONDITIONS

(A)   **Actions Against Us**

   No person or organization shall have a right under this policy:

   (1)   To bring **suit** against us in connection with this policy unless, as a condition precedent thereto, all policy terms and conditions have been fully complied with and the amount of an **insured's** obligation to pay shall have been finally determined, either by judgment or written agreement between the **insured**, the claimant or claimant's representative, and us.

(2)     To join us as a party to any action against an **insured** to determine the **insured**'s liability.

This insurance does not give anyone the right to add us as a party in an action against the **insured** to determine the **insured's** liability.

(B)     **Appeals**

We have the right, but not the duty, to appeal any judgment in excess of the **scheduled underlying insurance** and the liability limits of **other insurance**, even if the **insured** or the insurers providing the **scheduled underlying insurance** or **other insurance** do not appeal such a judgment.  If we exercise this right, we shall pay, in addition to the policy's applicable Limits of Insurance, all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

(C)     **Assignment**

Your rights and duties under this policy may not be transferred or assigned without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.  However, notice of cancellation sent to the **first named insured** designated in Declarations Item 1 and mailed to the address shown on the Declarations will be sufficient notice to effect cancellation of this policy.

(D)     **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the **policy period**, and for up to three (3) years after policy expiration or termination.

(E)     **Authorization and Notices**

**The first named insured** will act on behalf of all **insureds** with respect to the giving or receiving of any notices under this policy, payment or return of premiums, and receiving and accepting policy endorsements.  **The first named insured** also shall be responsible for notifying us and all **insureds** of any changes that might affect the insurance provided by this policy.

(F)     **Bankruptcy or Insolvency**

The **insured's** bankruptcy, insolvency, receivership, or inability to pay, or the bankruptcy, rehabilitation, liquidation, insolvency, receivership, or inability to pay, of any insurers providing the **scheduled underlying insurance** or **other insurance** will not relieve us from the payment of **loss** covered by this policy.  Under no circumstances will such bankruptcy, rehabilitation, liquidation, insolvency, receivership, or inability to pay require us to drop down, replace, or assume any obligation under the **scheduled underlying insurance** and this insurance will apply as if all the limits of any **scheduled underlying insurance** are fully available and collectible.

(G)     **Cancellation and Non-Renewal**

(1)     The **first named insured** may cancel this policy by mailing or delivering advance written notice to us stating when the cancellation is to take effect.

(2)     We may cancel this policy by mailing or delivering to the **first named insured** written notice of cancellation at least ten (10) days before the effective date of cancellation for non-payment of premium, or ninety (90) days before the effective date of a cancellation for any other reason.

(3)     We will mail or deliver notice to the **first named insured's** last mailing address known to us.

(4)    Notice of cancellation will state the effective date of cancellation.  The **policy period** will end on the day and hour stated in the cancellation notice.

(5)    If this policy is cancelled we will send to the **first named insured** any premium refund due as follows:

    (a)    If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final premium will not be less than the pro rata share of the Minimum Premium shown in Declarations Item 6.

    (b)    If the **first named insured** cancels, final premium will be based on the time this policy was in force.  The return premium will be calculated at ninety percent (90%) of the pro rata unearned premium. Final premium will not be less than the short rate share of the Minimum Premium shown in Declarations Item 6.

(6)    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium.  We or our representative's check, mailed or delivered, shall be sufficient tender of any refund due.

(7)    If we decide not to renew this policy, we will mail or deliver to the **first named insured** written notice of the non-renewal not less than thirty (30) days before the expiration date.

(8)    If notice is mailed, proof of mailing will be sufficient proof of notice under this condition.

(9)    Any of these provisions that conflict with a law that controls the cancellation or non-renewal of this policy are hereby changed to comply with that law.

(H)    **Changes**

Notice to any agent or knowledge possessed by any agent of ours, or any other person, will not affect a waiver or change in any part of this policy.  This policy can be changed only by a written endorsement issued by us or our authorized representative and made part hereof.

(I)    **Duties in the Event of an Occurrence, Claim or Suit**

(1)    You must see to it that we are notified as soon as practicable of an **occurrence** that is likely to involve this policy.  To the extent possible, notice should include:

    (a)    How, when and where the **occurrence** took place.

    (b)    The names and addresses of any injured persons and any witnesses.

    (c)    The nature and location of any injury or damage arising out of the **occurrence.**

(2)    If a **claim** is made against any **insured** that is reasonably likely to involve this policy, you must notify us in writing as soon as practicable.  You and any other involved **insured** must:

    (a)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim**.

    (b)    Authorize us to obtain records and other information.

    (c)    Cooperate with us in the investigation, settlement or defense of the **claim.**

(d)     Assist us in the enforcement of any right against any person or organization that may be liable to the **insured** because of injury or damage to which this insurance may also apply.

(e)     Written notice should be mailed to the following address:

> XL Group
> PO Box 614002
> Orlando, FL  32861-4002
> Email:
> napropcasclaimnewnotices@xlgroup.com

(3)     No **insured** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our expressed consent.

(J)     **Headings**

The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

(K)     **Inspection**

We or our duly authorized agent have the right, but not the duty, to:

(1)     Make inspections and surveys of the **insured's** premises and operations at any time.

(2)     Recommend changes.

(3)     Conduct loss control and prevention activity.

Such inspections, surveys, reports, or recommendations are for our benefit and relate to insurability of the risk and the premium to be charged for this policy, and do not constitute a representation or warranty that the **insured's** premises, operations or conditions are safe or healthy, or comply with applicable laws, regulations or codes.

(L)     **Maintenance of Underlying Insurance**

During the **policy period** you agree:

(1)     To keep **scheduled underlying insurance** in full force and effect.

(2)     That the terms, definitions, conditions and exclusions of **scheduled underlying insurance** will not materially change.

(3)     That the policy limits for the **scheduled underlying insurance** shall not decrease, except for any reduction or exhaustion of aggregate limits by payment of **loss**.

(4)     That the coverage of any renewals or replacements of **scheduled underlying insurance** will be no less broad than, and carry limits of insurance equal to or greater than, the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have been if you fully complied with these requirements.

(M)     **Other Insurance**

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

If **other insurance** applies to damages covered by this policy, this policy will apply excess of such **other insurance**.  However, this provision will not apply:

(1)     If the **other insurance** is written to be excess of this policy.

(2)     With respect to Insuring Agreement A only, if you have agreed in a written contract with another person or organization that this policy shall be primary and non-contributory with such other person or entity's coverage, but only with respect to damages arising out of insured operations or work on your behalf performed under such written contract.  When this Paragraph (2) applies, the coverage available to the other person or organization will be the lesser of the policy's Limits of Insurance or the minimum limits required by such written contract.  In that case, **other insurance** of that person or organization will apply as excess and not contribute prior to the insurance afforded by this policy.

(3)     Nothing in this Condition (M) shall make this policy subject to the terms, conditions and limitations of such **other insurance**.

(N)     **Premium**

(1)     The **first named insured** shall be responsible for payment of all premiums when due.

(2)     The premium for this policy shall be computed on the basis set forth in Declarations Item 6.  At the beginning of the **policy period**, the **first named insured** must pay us the Premium shown in Declarations Item 6.

(3)     When this policy expires or is cancelled, we will compute the earned premium for the time this policy was in force.  If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium.  If the earned premium is greater than the original premium paid, you will promptly pay us the difference.  If the earned premium is less than the original premium paid, we will return the difference to you.  But in any event, we shall retain the Minimum Premium as shown in Declarations Item 6 for each twelve (12) months of the **policy period**.

(O)     **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to you, this insurance applies as if each **insured** were the only **insured**, and separately to each **insured** against whom **claim** is made or **suit** is brought.

(P)     **Transfer of Rights of Recovery**

(1)     If any **insured** has the right to recover all or part of any payment we have made under this policy, those rights are transferred to us**.**  You must do nothing after **loss** to impair these rights and must help us enforce them.  If, prior to the time of an **occurrence**, you and the insurer of **scheduled underlying insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **insured contract**, we also will waive any rights it may have against such person or organization.

(2)     Any recoveries shall be applied as follows:

(a)     Any person or organization, including you, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first.

     © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

(b)     We will then be reimbursed up to the amount we have paid.

(c)     Lastly, any person or organization, including you, that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery shall be apportioned among the persons or organizations, including you, in the ratio of their respective recoveries as finally determined.

(Q)     **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of this policy will not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

EXHIBIT D

## ENDORSEMENT # 3

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### MARYLAND CHANGES – CANCELLATION AND NON-RENEWAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

Section VII. Conditions, (G) Cancellation and Non-Renewal is replaced with the following:

(G)     Cancellation and Non-Renewal

    (1)     The **first named insured** may cancel this policy by mailing or delivering advance written notice to us stating when the cancellation is to take effect.

    (2)     When this policy has been in effect for forty-five (45) days or less and is not a renewal policy, we may cancel this policy by mailing or delivering to the **first named insured** written notice of cancellation, stating the reason for cancellation, at least ten (10) days before the effective date of cancellation for non-payment of premium, or ninety (90) days before the effective date of a cancellation for any other reason.

    (3)     When this policy has been in effect for more than forty-five (45) days or is a renewal policy, we may cancel this policy by mailing the **first named insured**, written notice of cancellation at least:

        (a)     Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium.

        (b)     Ninety (90) days before the effective date of cancellation if we cancel for a permissible reason other than non-payment of premium, stating the reason for cancellation. Under this Paragraph (b), we may cancel only for one or more of the following reasons:

            (i)     When there exists material misrepresentation or fraud in connection with the application, policy, or presentation of a **claim**.

            (ii)     A change in the condition of the risk that results in an increase in the hazard insured against.

            (iii)     A matter or issue related to the risk that constitutes a threat to public safety.

            (iv)     If the **named insured's** driver's license or motor vehicle registration, or that of a driver insured under the coverage form, has been suspended or revoked during the **policy period** as a result of the **insured's** driving record.

        If we cancel pursuant to Paragraph (3) (b), you may request additional information on the reason for cancellation within thirty (30) days from the date of our notice.

**EXHIBIT D**

(4)     We will mail or deliver notice to the **first named insured's** last mailing address known to us.

If notice is mailed, we will send notice of cancellation to the **first named insured** by certificate of mail if:

(a)     We cancel for non-payment of premium; or

(b)     This policy is not a renewal of a policy we issued and has been in effect for forty-five (45) days or less.

If notice is mailed, we will send notice to the **first named insured** by certificate of mail or by commercial mail delivery service if we cancel for a reason other than non-payment of premium and this policy:

(a)     Is a renewal of a policy we issued; or

(b)     Has been in effect for more than forty-five (45) days.

We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice of cancellation.

(5)     Notice of cancellation will state the effective date of cancellation.  The **policy period** will end on the day and hour stated in the cancellation notice.

(6)     If this policy is cancelled we will send to the **first named insured** any premium refund due as follows:

(a)     If we cancel, final premium will be calculated pro rata based on the time this policy was in force.  Final premium will not be less than the pro rata share of the Minimum Premium shown in Declarations Item 6.

(b)     If the **first named insured** cancels, the refund will be calculated as follows:

(i)     For policies written for one year or less, we will refund ninety percent (90%) of the pro rata unearned premium.

(ii)    For policies written for more than one year:

(a)     If the policy is cancelled in the first year, we will refund ninety percent (90%) of the pro rata unearned premium for the first year, plus the full annual premium for subsequent years.

(b)     If the policy is cancelled after the first year, we will refund the pro rata unearned premium.

(iii)   For continuous and annual premium payment policies, we will refund ninety percent (90%) of the pro rata unearned premium for the year in which the policy is cancelled.

Final premium will not be less than the difference between the Minimum Premium shown in Declarations Item 6 and ninety percent (90%) of the pro rata unearned Minimum Premium.

(7)     Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium.  We or our representative's check, mailed or delivered, shall be sufficient tender of any refund due.

 © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Offices, Inc., with its permission.

**EXHIBIT D**

(8)     If we decide not to renew this policy, we will mail or deliver to the **first named insured** written notice of the non-renewal not less than forty-five (45) days before the expiration date.

(9)     When we elect not to renew a policy that has been in effect for more than forty-five (45) days for a reason other than non-payment of premium, we will provide a written statement of the actual reason for the refusal to renew. You may request additional information within thirty (30) days from the date of our notice.

(10)    If we offer to renew at least forty-five (45) days before the renewal date and you fail to make the required premium payment by the renewal date, the policy will terminate on the renewal date for non-payment of premium.

(11)    If non-renewal notice is mailed, we will send notice of non-renewal to the **first named insured** by certificate of mail or by commercial mail delivery service. We will maintain proof of mailing in a form authorized or accepted by the United States Postal Service or by other commercial mail delivery service when such service is used. Proof of mailing will be sufficient proof of notice.

(12)    Any of these provisions that conflict with a law that controls the cancellation or non-renewal of this policy are hereby changed to comply with that law.

All other terms and conditions remain the same.

EXHIBIT D

## ENDORSEMENT # 4

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### INDIANA AMENDATORY ENDORSEMENT – DEFINITION OF POLLUTANTS
### (Applicable to Insuring Agreements A and B)

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

> **WHEN INDIANA LAW GOVERNS THE INTERPRETATION OF THIS POLICY OR IS APPLIED IN A CIVIL PROCEEDING TO WHICH THIS INSURANCE APPLIES, THE DEFINITION OF POLLUTANTS IN THIS ENDORSEMENT SHALL APPLY.**

Section VI. Definitions (FF) **Pollutants** is deleted in its entirety and replaced by the following:

This definition replaces any definition of **pollutants** in the **scheduled underlying insurance** with respect to Insuring Agreement A.  The first sentence of Section VI. Definitions is deleted in its entirety and replaced by the following:

The following definition is applicable to Insuring Agreements A and B.

(FF)   **Pollutants** means any substance or material that is a solid, liquid, gaseous or thermal irritant or contaminant including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any substances or materials identified in the Schedule of this endorsement.  Waste includes materials to be recycled, reconditioned or reclaimed.

The definition of **pollutants** applies whether or not such irritant or contaminant has any function in your business, product(s), operations, premises, site or location.  The definition of **pollutants** also applies whether or not such irritant or contaminant is **your product** or products used by or for you.

**Pollutants** include any substance or material that can be toxic or hazardous, cause irritation to persons or animals and/or cause contamination to property and the environment and include but are not limited to:

(1)   Any substance or material specifically identified as a **pollutant** in the **scheduled underlying insurance**;

(2)   Diesel, kerosene, and other fuel oils, gasoline, butane, propane, natural gas, and other fuels, brake fluid, transmission fluid, and other hydraulic fluids, ethylene glycol, methyltertbutylether (MTBE), methanol, ethanol, isopropyl alcohol, and propylene glycol, and other fuel and antifreeze additives, grease, tar, petroleum distillates, lubrication oils, adjuvant oils, crop oils and other petroleum products and petroleum hydrocarbons, carbon monoxide, and other exhaust gases, stoddard solvent, mineral spirits, and other solvents, chromium compounds, emulsions/emulsifiers, naphtha tetrachloroethylene (PCE), perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals, methyl isobutyl ketone, methyl ethyl ketone, n-butyl acetate, 2-butoxyethanol, hexylene glycol, peroxides, freon, polychlorinated biphenyl (PCB), CFC113, chlorofluorocarbons, chlorinated hydrocarbons, adhesives, pesticides, insecticides, fungicides, fertilizer, animal or bird waste, barium, 1,2-

**EXHIBIT D**

dichloroethylene, ethylene dichloride, dichloromethane, methylene chloride, ethylbenzene, lead, mercury, selenium, sulfate, xylene, silica, sewage, and industrial waste materials; or

(3)     All substances, materials, constituents, derivatives or degradative byproducts, or additives specifically listed, identified, or described by one or more of the following references:

(a)     Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions);

(b)     Agency for Toxic Substances And Disease Registry ToxFAQs[TM];

(c)     Clean Air Act's List of 188 Air Toxics And Diesel Particulate Matter;

(d)     U.S. Environmental Protection Agency EMCI Chemical References Complete Index;

(e)     U.S. Environmental Protection Agency Persistent, Bioaccumulative, and Toxic Chemical List;

(f)     Indiana Department of Environmental Management, Remediation Closure Guide, March 22, 2012 edition, Table A-6 Screening Level Summary Table - 2012; and

(g)     Indiana Department of Environmental Management, Risk Integrated System of Closure Technical Guide, Default Closure Tables, January 31, 2006 Appendix 1 (Revised May 1, 2009).

## SCHEDULE

**Additional specifically identified substance(s) or material(s):**

All other terms and conditions remain the same.

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT D

**ENDORSEMENT # 5**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDMENT TO CONDITION (I) DUTIES IN THE EVENT OF AN OCCURRENCE, CLAIM OR SUIT
(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

Section VII. Conditions, (I) (2) (e) is deleted in its entirety and replaced by the following:

(e)        Written notice should be mailed or emailed to the following address:

|  |  |
|---|---|
| Mailed: | XL Catlin |
|  | PO Box 614002 |
|  | Orlando, FL  32861-4002 |
| Emailed: | napropcasclaimnewnotices@xlcatlin.com |

All other terms and conditions remain the same.

May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT D

**ENDORSEMENT # 6**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ABUSE AND MOLESTATION EXCLUSION**
**(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (A):

This insurance does not apply to:

(a)     The actual, alleged or threatened abuse or molestation of any persons, or

(b)     The hiring, employment, placement, training, supervision, investigation, reporting to the proper authorities, or failure to report to the proper authorities, retention of a person for whom any **insured** is or ever was legally responsible and whose conduct would be excluded by (a) above.

"Abuse and molestation" includes but is not limited to any verbal or nonverbal communication, behavior, or conduct with sexual connotations, infliction of physical, emotional, or psychological injury or harm whether for sexual gratification, discrimination, intimidation, coercion, or other purpose.

All other terms and conditions remain the same.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT D

### ENDORSEMENT # 7

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CONTRACTORS EXCLUSION
### WITH EXCEPTION FOR PROFESSIONAL SERVICES
### (Applicable to Insuring Agreements A and B)

This endorsement modifies insurance provided under the following:

### COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

The following is added to Section V. Exclusions, (A):

This insurance does not apply to:

(1)    **Property damage** to any property or equipment leased by the **insured**;

(2)    **Property damage** to property being installed, erected or worked upon by the **insured** or by any agents or subcontractors of the **insured**;

(3)    Any project insured under a wrap-up or any similar rating plan; or

The following is added to Section V. Exclusions, (C):

This insurance does not apply to:

(1)    **Property damage** arising out of:

    (a)    blasting or explosion, other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

    (b)    the collapse of or structural injury to any building or structure due to:

        (1)    the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, cofferdam or caisson work;

        (2)    the moving, shoring, underpinning, raising or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

    (c)    damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving.

(2)    Any professional services performed by or on behalf of the **insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

All other terms and conditions remain the same.

**EXHIBIT D**

**ENDORSEMENT # 8**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CROSS CLAIM EXCLUSION - NAMED INSURED VS. NAMED INSURED**
**(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (A):

This insurance does not apply to:

Any **claim** or **suit** brought by one **named insured** under this policy against another **named insured** under this policy.

All other terms and conditions remain the same.

## ENDORSEMENT # 9

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### DAMAGE TO REAL AND PERSONAL PROPERTY EXCLUSION
### (Applicable to Insuring Agreement A)

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (B):

This insurance does not apply to:

**Property damage** to:

(a)     Property the **insured** owns, rents or occupies, including any costs or expenses incurred by the **insured** or another person, organization or entity, for the repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

(b)     Premises the **insured** sells, gives away, or abandons, if the **property damage** arises out of any part of those premises.

(c)     Property loaned to the **insured.**

(d)     Personal property in the **insured's** care, custody or control.

(e)     That particular part of real property on which the **insured** or any contractors or subcontractors, working directly or indirectly on the **insured's** behalf, are performing operations, if the **property damage** arises out of those operations.

(f)     That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

All other terms and conditions remain the same.

EXHIBIT D

## ENDORSEMENT # 10

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EMPLOYEE BENEFITS LIABILITY EXCLUSION**
**(Applicable to Insuring Agreement B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (C):

This insurance does not apply to:

**Bodily injury, property damage** and **personal and advertising injury** arising out of:

(1)     any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government mandated disability benefits; or

(2)     any act, error or omission committed by or on behalf of the **insured** solely in the performance of one or more of the following administrative duties or activities:

    (a)     giving counsel to employees with respect to a **plan**;

    (b)     interpreting a **plan**;

    (c)     handling of records in connection with a **plan**;

    (d)     effecting enrollment, termination or cancellation of employees under a **plan**; or

    (e)     any **claim** against an **insured** solely by reason of his, her or its status as an administrator, the **plan** or you as sponsor of the **plan**.

For the purposes of this endorsement, the following definitions are added to Section VI. Definitions:

**Claim** means a written demand upon the **insured** for compensatory damage or services and shall include the service of **suit** or institution of arbitration proceedings against the **insured**.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments related to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **plan** is subject.

**Plan** means any **plan**, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of **ERISA** or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

     © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

(1)     a welfare **plan**, as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government mandated disability benefits.

(2)     a pension **plan** as defined in **ERISA** or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government mandated disability benefits; or

(3)     a combination of (1) and (2), above.


All other terms and conditions remain the same.

**EXHIBIT D**

**ENDORSEMENT # 11**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EMPLOYERS' LIABILITY EXCLUSION**
**(Applicable to Insuring Agreement B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (C):

This insurance does not apply to:

**Bodily injury** to any employee of the **insured** arising out of and in the course of his or her employment by the **insured** or performance of duties related to the conduct of the **insured's** business.

All other terms and conditions remain the same.

## ENDORSEMENT # 12

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EXTERIOR INSULATION AND FINISHING SYSTEMS EXCLUSION
### (Applicable to Insuring Agreements A and B)

This endorsement modifies insurance provided under the following:

## COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY

The following is added to Section V. Exclusions, (A):

This insurance does not apply to:

(A)  (1)  The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any **exterior insulation and finishing system (EIFS)** or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

(2)  **Your product** or **your work** with respect to any exterior component, fixture or feature of any structure if an **exterior insulation and finishing system**, or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

(B)  For the purposes of this endorsement, the following definition is added to Section VI. Definitions:

**Exterior insulation and finishing system** means a non-load bearing exterior cladding or finishing system, and all component parts therein, used on any part of any structure, and consisting of:

(1)  A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

(2)  The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

(3)  A reinforced or unreinforced base coat;

(4)  A finish coat providing surface texture to which color may be added; and

(5)  Any flashing, caulking or sealant used with the system for any purpose.

All other terms and conditions remain the same.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

**ENDORSEMENT # 13**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**FUNGI OR BACTERIA LIABILITY EXCLUSION**
**(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (A):

This insurance does not apply to:

(a)     Any liability which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(b)     Any **loss**, cost or expenses arising out of the abating, testing for, monitoring, clean up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of **fungi** or bacteria, by any **insured** or by any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

For the purposes of this endorsement, the following definition is added to Section VI. Definitions:

**Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

All other terms and conditions remain the same.

**ENDORSEMENT # 14**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**LEAD EXCLUSION**
**(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (A):

This insurance does not apply to:

(1)   **Bodily injury**, **property damage** or **personal and advertising injury** arising out of lead, including but not limited to the ingestion, inhalation or absorption of lead in any form;

(2)   Any **loss**, cost or expense arising out of any request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead; or

(3)   Any **loss**, cost or expense arising out of any **claim** or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of lead.

All other terms and conditions remain the same.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

**ENDORSEMENT # 15**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SILICA AND SILICA-RELATED DUST EXCLUSION**
**(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

The following is added to Section V. Exclusions, (A):

This insurance does not apply to:

(1)     The actual, alleged, threatened or suspected inhalation of, or ingestion of **silica** or **silica-related dust**.

(2)     The actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of **silica** or **silica-related dust**.

(3)     Any **loss**, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of **silica** or **silica-related dust** by any **insured** or by any other person or entity.

For the purposes of this endorsement, the following definitions are added to Section VI. Definitions:

**Silica** means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**Silica-related dust** means a mixture or combination of **silica** and other dust or particles.

All other terms and conditions remain the same.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**EXHIBIT D**

**ENDORSEMENT # 16**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**LIQUOR LIABILITY EXCLUSION APPLICABLE TO INSURING AGREEMENT B**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

Section V. Exclusions, (C) (10) is deleted in its entirety and replaced by the following:

This insurance does not apply to:

(10)    **Liquor Liability**

**Bodily injury** or **property damage** for which the **insured** may be held liable by reason of:

(a)    Causing or contributing to the intoxication of any person;

(b)    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(c)    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

In addition to (a), (b), and (c) above, this exclusion applies to any **claims** against any **insured** that allege negligence or other wrongdoing in:

1.    The supervision, hiring, employment, training or monitoring of others by that **insured;** or

2.    Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol.

All other terms and conditions remain the same.

**ENDORSEMENT # 17**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**VIOLATION OF COMMUNICATION OR INFORMATION LAWS EXCLUSION**
**(APPLICABLE TO INSURING AGREEMENTS A AND B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

Section V. Exclusions (A) (9) Violation of Communication or Information Laws is deleted in its entirety and replaced by the following:

Any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment thereto, that prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.


All other terms and conditions remain the same.

EXHIBIT D

**ENDORSEMENT # 18**

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION
AND DATA-RELATED LIABILITY EXCLUSION
(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

Section V. Exclusions, (A) (4) is deleted in its entirety and replaced with the following:

(4)     **Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

(a)     Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(b)     The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate or process intangible property. For the purpose of this exclusion, intangible property includes **electronic data**.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other **loss**, cost or expense incurred by you or others arising out of that which is described in Paragraph (a) or (b) above.

All other terms and conditions remain the same.

EXHIBIT D

## ENDORSEMENT # 19

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AIRCRAFT INCLUDING UNMANNED AIRCRAFT EXCLUSION**
**(Applicable to Insuring Agreements A and B)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

I.   Section V. Exclusions, (B) is amended to include the following additional exclusion:

This insurance does not apply to:

**Aircraft including Unmanned Aircraft**

(1)   **Unmanned Aircraft**

**Bodily injury**, **property damage** or **personal and advertising injury** arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an **unmanned aircraft**.  The term "use" shall include operation, loading and unloading.  This exclusion applies even if the **claims** against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others.

(2)   **Aircraft (Other than Unmanned Aircraft)**

**Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than **unmanned aircraft**) owned or operated by or rented or loaned to any **insured**.  The term "use" shall include operation, loading and unloading.  This exclusion applies even if the **claims** against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others.

II.   Section V. Exclusions, (C) (1) **Aircraft, Auto or Watercraft** is deleted in its entirety and replaced by the following:

This insurance does not apply to:

(1)   **Aircraft, Auto or Watercraft**

(a)   **Unmanned Aircraft**

**Bodily injury**, **property damage** or **personal and advertising injury** arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an **unmanned aircraft**.  The term "use" shall include operation, loading and unloading.  This exclusion applies even if the **claims** against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others.

**EXHIBIT D**

    (b)       **Aircraft (Other Than Unmanned Aircraft), Auto or Watercraft**

            **Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than **unmanned aircraft**), **auto** or watercraft owned or operated by or rented or loaned to any **insured**.  The term "use" shall include operation, loading and unloading.  This exclusion applies even if the **claims** against any **insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others.

III.    For the purposes of this endorsement, the following definition is added to Section VI. Definitions:

    **Unmanned aircraft** means an aircraft that is not:

    (1)    Designed;

    (2)    Manufactured; or

    (3)    Modified after manufacture;

    to be controlled directly by a person from within or on the aircraft.

All other terms and conditions remain the same.

© 2017 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT D

### ENDORSEMENT # 20

This endorsement, effective 12:01 a.m., **October 01, 2018** forms a part of

Policy No. **US00063327LI18A** issued to **John C. Grimberg Company, Inc.**

by **XL Specialty Insurance Company**.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### MARYLAND - CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM WITH RETAINED LIMIT
(Applicable to Insuring Agreements A and B)

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS FOLLOW FORM AND UMBRELLA LIABILITY POLICY**

I.    **Cap on Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

II.    With respect to this endorsement Declarations Item 4 **Self-Insured Retention** is amended to include the following:

**Self-Insured Retention**:  $1,000,000 applicable to each **certified act of terrorism**

III.    Solely with respects to a **suit** that seeks damages resulting from a **certified act of terrorism**, Section III. Defense and Settlement, (B) is deleted in its entirety, and replaced by the following:

(B)    We will have the right and duty to defend any **suit** against the **insured** that seeks damages arising out of coverage subject to the **self-insured retention** applicable to each **certified act of terrorism** shown in Paragraph II. above, once the **self-insured retention** applicable to each **certified act of terrorism** shown in Paragraph II. above has been exhausted by the payment of **loss** to which this policy applies.

IV.    Solely for the purposes of this endorsement, Section VI. Definitions, (II) and (KK) are deleted in their entirety and replaced by the following:

(II)    **Retained limit** means:

(1)    For Insuring Agreement A, the total applicable limits of the **scheduled underlying insurance** shown in Declarations Item 5. or the actual limits of such **scheduled underlying insurance** whichever is greater; and

(2)    For Insuring Agreement B:

(a)    The **self-insured retention** stated in Declarations Item 4. applicable to each **occurrence,** other than a **certified act of terrorism**, not covered by **scheduled underlying insurance**; or

© 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

(b)     The **self-insured retention** applicable to each **certified act of terrorism** shown in Paragraph II. above.  **Defense expenses** shall not erode the **self-insured retention** applicable to each **certified act of terrorism** shown in Paragraph II. above.

(KK)   **Self-Insured Retention** means the dollar amount set forth in Paragraph II. above that the **insured** must pay before we are responsible to make payment under Insuring Agreement B.  The **self-insured retention** does not apply to **occurrences** that would have been covered by the **scheduled underlying insurance** but for the exhaustion of the applicable limits by the payment of **loss**.

V.     For the purposes of this endorsement, the following definitions are added to Section VI. Definitions:

**Defense expenses** means any payment allocated to the investigation, settlement or defense of a specific **claim** or **suit** including the following:

(1)     Attorney's fees and all other investigation, **loss** adjustment and litigation expenses;

(2)     Premiums on bonds to release attachments;

(3)     Premiums on appeal bonds required by law to appeal any **claim** or **suit**;

(4)     Costs taxed against the **insured** by law to appeal any **claim** or **suit**;

(5)     Pre-judgment interest awarded against the **insured**; and

(6)     Interest that accrues after entry of judgment.

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act and any amendment thereto.  The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

(1)     The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

(2)     The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The terms and conditions of any terrorism exclusion, or the inapplicability or omission of terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

All other terms, definitions, conditions and exclusions remain the same.

          © 2015 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.