**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

JOHN C. GRIMBERG COMPANY, INC.,

     *Plaintiff*,

    v.

XL SPECIALTY INSURANCE
COMPANY *et al.*,

     *Defendants*.

No. 1:23-cv-01690

---

**MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

Thomas S. Garrett (VSB No: 73790)
HARMAN CLAYTOR CORRIGAN &
WELLMAN, P.C.
4951 Lake Brook Drive, Suite 100
Glen Allen, Virginia 23060-9272
Phone: (804) 747-5200
Fax:    (804) 747-6085
tgarrett@hccw.com


Ezra S. Gollogly (*pro hac vice*)
Joseph Dudek (*pro hac vice*)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax:    (410) 539-1269
egollogly@kg-law.com

*Attorneys for XL Specialty and XL America*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 7

LEGAL STANDARDS ................................................................................................... 9

ALLEGED FACTS ......................................................................................................... 9

    A.   Grimberg's Construction Work ...........................................................................9

    B.   Grimberg's Insurance Policies...........................................................................11

    C.   Grimberg's Claims.............................................................................................13

ARGUMENT................................................................................................................. 13

    I.   Maryland law governs the policies. ..................................................................13

    II.   Grimberg cannot establish coverage under the Old Republic policies. .......................17

        A.   Under Grimberg's allegations, it seeks no sums that it became "legally obligated to pay as damages.".............................................................................18

        B.   Under Grimberg's allegations, there was no "occurrence." ...............................22

        C.   Under Grimberg's allegations, there was no "property damage."....................26

    III.   Grimberg alleges no plausible claim for breach of the implied covenant of good faith and fair dealing. ...............................................................................29

CONCLUSION.............................................................................................................. 32

# TABLE OF AUTHORITIES

## CASES

*ACAC Downtown, LLC v. Cincinnati Ins. Inc.*,
  660 F. Supp. 3d 529 (W.D. Va. 2023) ..................................................................................... 31

*Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*,
  No. 3:08-CV-233, 2008 WL 2857191 (E.D. Va. July 21, 2008) ............................................. 30

*All Class Constr., LLC v. Mut. Benefit Ins.*,
  3 F. Supp. 3d 409 (D. Md. 2014) ............................................................................................ 30

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981) ................................................................................................................. 16

*Appalachian Reg'l Healthcare v. Cunningham*,
  806 S.E.2d 380 (2017) ............................................................................................................. 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 8, 9, 25

*Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*,
  625 A.2d 1021 (Md. 1993) ................................................................................................ 20, 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 9, 25, 32

*Bloch v. Homesite Ins. Co.*,
  No. 1:14-cv-1208 (AJT), 2015 WL 13854990 (E.D. Va. July 17, 2015) .................................. 9

*Boyd v. Commonwealth*,
  374 S.E.2d 301 (Va. 1988) ...................................................................................................... 14

*Builders Mut. Ins. Co. v. ARC Constr., LLC*,
  No. 1:15-CV-00406-AJT-JFA, 2015 WL 13066125 (E.D. Va. July 2, 2015) ........................ 25

*Builders Mut. Ins. Co. v. Dragas Mgmt. Corp. (Dragas II)*,
  793 F. Supp. 2d 785 (E.D. Va. 2011) ......................................................................... 18, 20, 21

*Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*,
  709 F. Supp. 2d 432 (E.D. Va. 2010) ............................................................................... 18, 20

*Cecilia Schwaber Tr. Two v. Hartford Acc. & Indem. Co.*,
  437 F. Supp. 2d 485 (D. Md. 2006) ........................................................................................ 30

*City Ins. v. Lynchburg Foundry*,
  No. 88-0178-L, 1989 WL 1102787 (W.D. Va. Apr. 25, 1989) ............................................... 16

*Clark v. Martinez*,
   543 U.S. 371 (2005) ................................................................................................ 16

*Copp v. Nationwide Mut. Ins. Co.*,
   692 S.E.2d 220 (Va. 2010) ................................................................................ 18, 22

*Corn Plus Co-op. v. Cont'l Cas. Co.*,
   516 F.3d 674 (8th Cir. 2008) .................................................................................. 28

*Couplin v. Payne*,
   613 S.E.2d 592 (2005) ...................................................................................... 14, 16

*Elec. Motor & Contracting Co., Inc. v. Travelers Indem. Co. of Am.*,
   235 F. Supp. 3d 781 (E.D. Va. 2017) ........................................................... 18, 19, 20

*Entrepraneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*,
   No. 3:22-cv-529, 2023 WL 5670041 (E.D. Va. Aug. 31, 2023) ............................... 11

*Erie Ins. Exch. v. EPC MD 15, LLC*,
   822 S.E.2d 351 (Va. 2019) ................................................................................ 15, 19

*Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*,
   518 F. Supp. 2d 803 (W.D. Va. 2007) ..................................................................... 16

* *French v. Assurance Co. of Am.*,
   448 F.3d 693 (4th Cir. 2006) ................................................................. 8, 22, 23, 26

*Harriman v. Associated Indus. Ins. Co.*,
   91 F.4th 724 (4th Cir. 2024) .................................................................................. 19

*Harris v. Harris v. Keystone Ins. Co.*,
   No. 1:13-cv-2839, 2013 WL 6198160 (D. Md. Nov. 26, 2013) ............................... 30

*Hartz v. Liberty Mut. Ins. Co.*,
   269 F.3d 474 (4th Cir. 2001) .................................................................................. 30

*Hopeman Bros., Inc. v. Cont'l Cas. Co.*,
   307 F. Supp. 3d 433 (E.D. Va. 2018) ...................................................................... 14

*Johnson v. Nationwide Mut. Ins. Co.*,
   No. 6:22-cv-78, 2023 WL 3586438 (W.D. Va. May 22, 2023) ............................... 31

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) ................................................................................................ 13

* *Lerner v. Assurance Co. of Am.*,
   707 A.2d 906 (1998) ........................................................................................ 22, 23

*Lexie v. State Farm Mut. Auto. Ins. Co.*,
   469 S.E.2d 61 (Va. 1996) ................................................................ 13

*Lydick v. Erie Ins. Prop. & Cas. Co.*,
   358 F. Supp. 3d 552 (S.D.W. Va. 2019)......................................... 25

*Lynchburg v. Ins. Co. of Ireland*,
   No. 87-0181-L, 1990 WL 1232911 (W.D. Va. Aug. 27, 1990) ............. 16

*M Consulting & Exp., LLC v. Travelers Cas. Ins. Co. of Am.*,
   2 F. Supp. 3d 730 (D. Md. 2014)...................................................... 27

*McCleary-Evans v. Md. Dept. of Transp., State Hwy. Admin.*,
   780 F.3d 582 (4th Cir. 2015) ............................................................ 9

*Penn-Am. Ins. Co. v. Coffey*,
   368 F.3d 409 (4th Cir. 2004) .......................................................... 18

*Philips v. Pitt County Mem'l Hosp.*,
   572 F.3d 176 (4th Cir. 2009) .......................................................... 11

*Rex. Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
   407 F.3d 631 (4th Cir. 2005) .......................................................... 14

*Sangamo Weston, Inc. v. Nat'l Sur. Corp.*,
   414 S.E.2d 127 (S.C. 1992) ............................................................ 16

*Schnabel Found. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   No. CV PX-16-0895, 2018 WL 2967384 (D. Md. June 12, 2018)........ 29

*Selective Ins. Co. of the Southeast v. Williamsburg Christian Acad.*,
   458 F. Supp. 3d 409 (E.D. Va. 2020) ............................................... 30

*Stanley Martin Cos., Inc. v. Ohio Cas. Grp.*,
   313 F. App'x 609 (4th Cir. 2009) ................................................ 24, 25

*Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*,
   594 F. Supp. 2d 630 (E.D. Va. 2009) ............................................... 31

*Travelers Indem. Co. of Am. v. Tower-Dawson, LLC*,
   299 F. App'x 277 (4th Cir. 2008) .................................................... 24

*Walk v. Hartford Cas. Ins. Co.*,
   852 A.2d 98 (Md. 2004) ............................................................ 18, 22

*Woodfin Equities Corp. v. Harford Mut. Ins. Co.*,
   678 A.2d 116 (Md. App. Ct. 1996).......................................... 24, 27, 29

*Zak v. Chelsea Therapeutics Intern., Ltd.*,
    780 F.3d 597 (4th Cir. 2015) ............................................................................ 9

## STATUTES

31 U.S.C. § 3711(g)(1) .......................................................................................... 21

Md. Code Ann., Cts. & Jud. Proc. § 3-1701 ....................................................... 30

Md. Code Ann., Ins. § 27-1001 ............................................................................ 30

Va. Code Ann. § 38.2-2204 .................................................................................. 15

Va. Code Ann. § 38.2-2205 .................................................................................. 15

Va. Code Ann. § 38.2-313 .................................................................................... 14

## INTRODUCTION

John C. Grimberg Company, Inc. is building a school at Marine Corps Base Quantico for the United States Navy. During that project, Grimberg and its subcontractors built defective walls. After the defects were discovered, the Navy sent Grimberg a letter demanding that Grimberg tear down and rebuild the walls in a manner that complies with the construction contract. In this case, Grimberg seeks general liability insurance coverage for costs from replacing its own defective construction.

This case is unlike the ordinary liability coverage dispute, in which the Court examines the record in an underlying lawsuit. In that context, the allegations of the underlying complaint determine whether a potential for coverage exists. If such a potential exists, the insurer has a duty to defend. To the extent the underlying plaintiff recovers covered damages, the insurer also has a duty to indemnify.

Here, there is no underlying lawsuit or complaint. Instead, Grimberg alleges that it tore down and replaced its own work in response to the Navy's letter. For three principal reasons, Grimberg's Amended Complaint fails to state a claim and should be dismissed:[1]

*First*, the Amended Complaint does not allege that Grimberg became "legally obligated to pay as damages" any sum to any person, as the policies require. Grimberg's contractual obligation to correct its deficient work is not an obligation to pay "as damages" under a general liability insurance policy as a matter of law. *Infra* § II.A.

*Second*, the Amended Complaint does not allege "property damage" caused by an "occurrence," as the policies also require. To satisfy this requirement, the Amended Complaint

---

[1] Grimberg filed the Amended Complaint in response to motions to dismiss filed by Defendants. ECF Nos. 22, 24. Grimberg also filed an opposition to Defendants' motions that discusses the Amended Complaint. ECF Nos. 46–48.

would have to allege facts giving rise to a plausible claim that the defective walls caused physical injury to other non-defective work. *French v. Assurance Co. of Am.*, 448 F.3d 693, 706 (4th Cir. 2006). The Amended Complaint lacks any such allegations. *Infra* § II.B.

Defendants raised this very argument in their motions to dismiss Grimberg's initial complaint. In response, Grimberg added language to its Complaint stating that the defective walls "caused damage to other conforming, non-defective work at the Project by other subcontractors." Amend. Compl. ("1AC"), ECF No. 46, at ¶ 31. This language is not a *factual* allegation; it merely parrots back the applicable legal standard. It is the precise sort of "[t]hreadbare recital[]" and "mere conclusory statement[]" that is forbidden by *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Apart from these legal conclusions, the Amended Complaint does not allege facts that explain how the defective walls could have possibly, let alone plausibly, caused physical injury to other non-defective work or covered loss of use. *Infra* § II.C.

*Third*, the Amended Complaint alleges no plausible claim for breach of the implied covenant of good faith and fair dealing. This claim fails for a number of reasons, including that there is no independent cause of action for bad faith under Maryland law (which Defendants contend govern) or Virginia law (which Grimberg contends governs). More fundamentally, the Amended Complaint is simply devoid of allegations of any improper claims handling. *Infra* § II.

In sum, the Amended Complaint confirms that the legal defects in Grimberg's claims are unfixable. Defendants have no coverage obligation. Nor can Grimberg somehow establish a breach of any good-faith obligations. The Court should dismiss the Amended Complaint with prejudice.

## LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint and does not resolve contests surrounding the facts or merits of a claim. *Bloch v. Homesite Ins. Co.*, No. 1:14-cv-1208 (AJT), 2015 WL 13854990, at *2 (E.D. Va. July 17, 2015). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *McCleary-Evans v. Md. Dept. of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (cleaned up). A complaint must include "factual allegations sufficient to raise a right to relief above the speculative level." *Id.* "Rule 8(a)(2) requires that 'a complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face' in the sense that the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In considering a motion to dismiss, courts may consider documents attached or incorporated into the complaint without converting it to a motion for summary judgment. *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015).

## ALLEGED FACTS [2]

### A.    Grimberg's Construction Work

"In November 2017, the Navy awarded Grimberg a contract" to build a school at "Marine Corps Base Quantico." 1AC ¶ 15. The school was to be built using "Insulated Concrete Form ('ICF') walls" that would support "[s]tructural steel beams and joists" that hold up the "second-

---

[2] Defendants assume for this motion that all well-pled facts in the complaint are true. Defendants reserve their right to challenge any allegation if the complaint survives this motion.

floor slabs and roof." *Id*. The Navy chose these ICF walls to withstand "vertical and lateral loads anticipated to be imposed on a school structure located on a Marine base." 1AC ¶ 16.

But the ICF walls Grimberg and its subcontractors built were defective. Testing in 2021 found "void spaces" in the walls "that needed to be repaired." 1AC ¶ 21. Further investigation revealed that the reinforcing steel bars ("rebar") in the walls "had drifted toward the middle of the walls, resulting in defective walls," 1AC ¶ 22, and this drifting affected walls "throughout the project," 1AC ¶ 23. The walls were "so defective as to be not correctable." 1AC ¶ 25.

Grimberg's Amended Complaint alleges that the defective ICF walls "damaged and/or rendered unusable[ ] other parts of the Project's integrated[ ] primary framing system," including "steel beams, steel joints, a floor slab, and the roof." 1AC ¶ 24. The Amended Complaint does not, however, allege any facts that explain how defects *within* the concrete walls (like misplaced rebar) could have damaged steel and concrete components *outside* the walls (like steel beams or the roof). Instead, Grimberg just realleges the following legal conclusion: the ICF wall subcontractor's "defective work caused damage to other conforming, non-defective work at the Project by other subcontractors." 1AC ¶ 31.

Ultimately, the Navy sent Grimberg a letter "order[ing] that the ICF walls 'be demolished and reconstructed.'" 1AC ¶ 26. Reciting back the language of its insurance policies, Grimberg alleges that this letter was "a claim for damages," noting that it had to follow the Navy's order under the Federal Acquisition Rules (FAR). 1AC ¶ 26. But Grimberg also alleges that the Navy directed Grimberg to perform work, not pay the Navy. 1AC ¶ 26 ("The Contractor shall, without charge, replace or correct work."); 1AC ¶ 27 (the ICF walls "shall be reinstalled"). Similarly, Grimberg alleges that the Navy's letter created a "duty to proceed" with the reinstallation, but not

a duty to pay damages. 1AC ¶ 28. Finally, Grimberg alleges that if it failed to reinstall the ICF

walls, its "bond insurer"—not Grimberg—would have been liable to the Navy. *Id*.

> Ultimately, Grimberg tore down and replaced the ICF walls:

> Grimberg incurred costs to repair or replace property damage to other conforming work of other subcontractors. This work includes ductwork, HVAC piping, insulation, metal decking, roofing, shoring and storing of structural steel, slab protection, underslab radon piping, underground electrical work, foundation dowel bars, concrete masonry unit walls, fireproofing, mechanical, electrical and plumbing ("MEP") work, walls and doorframes, exterior wall waterproofing, vapor barrier, brickwork and refurbishing materials.

1AC ¶ 31. During "the demolition and reconstruction work," Grimberg alleges that "property

and material were stored on site, which were not under Grimberg's exclusive custody, care or

control." *Id*.

### B.    Grimberg's Insurance Policies

In all relevant policy years, Grimberg bought commercial general liability policies from

non-party Old Republic General Insurance Corporation. 1AC ¶¶ 33, 36, 39.[3] The Old Republic

policies offer certain insurance coverage but only up to the applicable limit of liability:

$1 million for each "occurrence" and $2 million total. *Id*.

For coverage above these limits, Grimberg bought Defendants' excess policies (the

"Excess Policies"). 1AC ¶¶ 34, 37, 40, 42. For the period October 1, 2018 to October 1, 2019,

Grimberg bought a policy from XL Specialty Insurance Company ("XL Specialty") with a $25

million per-occurrence limit and a $25 million aggregate limit. 1AC ¶ 34. For the period October

---

[3] The terms of the insurance policies speak for themselves. The insurance policies are "integral to the complaint and authentic," so the Court can read the policies directly without relying on Grimberg's allegations reciting policy provisions. *Entrepreneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*, No. 3:22-cv-529, 2023 WL 5670041, at *2 (E.D. Va. Aug. 31, 2023) (citing *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

1, 2019 to October 1, 2020, Grimberg bought another policy from XL Specialty with a $25

million per-occurrence limit and a $25 million aggregate limit. 1AC ¶ 37. For the period October

1, 2020 to October 1, 2021, Grimberg bought a policy from Arch Specialty Insurance Company

("Arch Specialty") with a $1 million per-occurrence limit and a $2 million aggregate limit and,

above that, a policy from XL Insurance America, Inc. ("XL America") with a $10 million per-

occurrence limit and a $10 million aggregate limit. 1AC ¶¶ 40, 42. Watford Specialty Insurance

Company ("Watford") is a 50% quota share participant with Arch Specialty on the Arch

Specialty policy.

The Excess Policies are "follow form" excess policies, in that they provide coverage only

for claims covered by the underlying Old Republic policies, subject to certain additional terms.

1AC ¶¶ 35, 38, 41, 43. Each Excess Policy's insuring agreement requires Grimberg to establish

coverage under that the Old Republic policies:[4]

- The XL Specialty policies promise, under certain conditions, to "pay on behalf of [Grimberg] … those amounts [Grimberg] becomes legally obligated to pay as damages in excess of the **scheduled underlying insurance** as a result of a **claim** covered by the **scheduled underlying insurance**." 1AC Ex. D, ECF No. 46-4, at 17; 1AC Ex. F, ECF No. 46-6, at 17.[5]

- The Arch Specialty policy promises, under certain conditions, to "pay on behalf of [Grimberg] … those amounts of **loss** for which coverage is provided under the definitions, terms, conditions, limitations, and exclusions of the **controlling underlying insurance**." 1AC Ex. H, ECF No. 46-9, at 6.

- The XL American policy covers a loss, under certain conditions, only if it "is insured by all of the policies shown in our Schedule of 'Underlying Insurance'.  If any 'Underlying Insurance' does not pay damages, for reasons other than exhaustion of the aggregate limit of insurance, then we shall not pay such damages." 1AC Ex. I, ECF No. 46-9, at 28.

---

[4] By focusing on threshold issues of coverage under the Old Republic policies' insuring agreements, Defendants waive no arguments under any provision in the Old Republic policies or in the Excess Policies.

[5] All citations to pages in exhibits to the complaint are to the blue page numbers added to the document by CM/ECF at the top of the page, not to any preexisting pagination.

Each Excess Policy's schedule of underlying insurance lists that year's Old Republic policy as underlying insurance. 1AC Ex. D, ECF No. 46-4, at 15; 1AC Ex. F, ECF No. 46-6, at 15; 1AC Ex. H, ECF No. 46-8, at 3; 1AC Ex. I, ECF No. 46-9, at 14.

## C.    Grimberg's Claims

Grimberg "sought coverage" under the Excess Policies. 1AC ¶ 32. "Between August 2021 and March 2022, Grimberg had communications with the excess insurers and provided numerous documents relating to its claim for insurance coverage." 1AC ¶ 47. XL Specialty and XL America denied coverage in March 2022. 1AC ¶ 48. The other insurers denied coverage in October 2022. Along with their other bases for denying, all of the insurers explained that because Grimberg had not exhausted the underlying Old Republic policies, the Excess Policies were not triggered. 1AC ¶¶ 50, 52.

In Count I, Grimberg seeks a declaration that the "excess insurers are obligated to provide Grimberg with insurance coverage for property damage to conforming work." 1AC ¶ 55. In Count II, Grimberg alleges that the excess insurers have breached their insurance contracts by refusing to provide such coverage. 1AC ¶ 62. And in Count III, Grimberg contends that by refusing to provide coverage, the insurers breached the implied covenant of good faith and fair dealing. 1AC ¶ 70.

## ARGUMENT

## I.    Maryland law governs the policies.

Maryland law governs the insurance policies because they were delivered to Grimberg in Maryland. Virginia choice-of-law principles govern this action. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Virginia follows the common law rule that contracts, including insurance policies, are "governed by the law of the place where made." *Lexie v. State Farm Mut. Auto. Ins. Co.*, 469 S.E.2d 61, 63 (Va. 1996). A contract is "made" where "the last act

to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635–36 (4th Cir. 2005). Absent evidence to the contrary, this Court assumes that the insurance policy was delivered to the insured at its home address. *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 307 F. Supp. 3d 433, 441 (E.D. Va. 2018).

Each Excess Policy's declarations page shows delivery to a Maryland company at its Maryland address. 1AC Ex. D, ECF No. 46-4, at 10 (XL Specialty); Ex. F, ECF No. 46-6, at 10 (XL Specialty); Ex. H, ECF No. 46-8, at 1 (Arch Specialty & Watford); Ex. I, ECF No. 46-9, at 10 (XL America). Each of the primary policies, to which the Excess Policies follow form, was similarly delivered to a Maryland company at its Maryland address, using a Maryland broker. 1AC Ex. C, ECF No. 46-3, at 5; 1AC Ex. E, ECF No. 46-5, at 2; 1AC Ex. G, ECF No. 46-7, at 2.

In its Amended Complaint, Grimberg cites an inapplicable statute, under which "[a]ll insurance contracts on or with respect to the ownership, maintenance or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth." Va. Code Ann. § 38.2-313; 1AC ¶ 11. Because this statute modifies common law choice-of-law rules, it is strictly construed. "A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended." *Couplin v. Payne*, 613 S.E.2d 592, 595–96 (2005) (quoting *Boyd v. Commonwealth*, 374 S.E.2d 301, 302 (Va. 1988)). "When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule." *Id.*

The Excess Policies at issue here are not "on or with respect to the ownership, maintenance or use of property in this Commonwealth" under Section § 38.2-313. As the

Supreme Court of Virginia noted, in its one decision mentioning Section 38.2-313, the phrase "ownership, maintenance or use" tracks language appearing in statutes governing liability coverages purchased for particular property, such as autos, aircraft, and watercraft principally garaged in Virginia. *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 n.5 (Va. 2019) (citing Va. Code §§ 38.2-2204, 38.2-2205).

The Excess Policies are untethered to the ownership, maintenance, or use of any property, much less any property located in Virginia. They mention no Virginia property and contain no Virginia endorsements. 1AC Exs. D, F, H, I (ECF Nos. 46-4, 46-6 46-8, 46-9). The underlying Old Republic policies also mention no property in Virginia—much less property owned, maintained, or used in Virginia. 1AC Ex. C, ECF No. 46-3. The "coverage territory" in the Old Republic policies, moreover, is not limited to Virginia but, instead, is defined to include the United States, Puerto Rico, Canada, certain international waters and airspace, and sometimes "[a]ll other parts of the world." 1AC Ex. C, ECF No. 46-3, at 8. 20. This is because the Old Republic policies and the Excess Policies insure Grimberg's general risk of liability, not specific to a property in Virginia.

Grimberg's arguments would effectively rewrite Section 38.2-313. Rather than applying only to "ownership, maintenance or use" of property in Virginia, any liability policy would retroactively be deemed "made in the Commonwealth" whenever bodily injury or property damage happens to occur at any Virginia site where the insured performs operations. But the "mention of a specific item in a statute implies that other omitted items were not intended to be included within the scope of the statute," and Virginia courts will reject any construction adding words to a statute. *Smith Mtn. Lake Yacht Club, Inc. v. Ramaker*, 542 S.E.2d 392, 395–96 (Va. 2001). As a result, Grimberg's interpretation of Section 38.2-313 would impermissibly abrogate

the common law more broadly than the legislature has expressly mandated.[6] *Couplin*, 613 S.E.2d at 595–96.

In addition, Grimberg's construction of Section 38.2-313 would raise significant constitutional concerns if adopted by this Court. *Clark v. Martinez*, 543 U.S. 371, 381 (2005) (the constitutional avoidance canon "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts"). For this statute to satisfy the Full Faith and Credit Clause and the Due Process Clause, it "must have a significant contact or significant aggregation of contacts, creating state interest, such that the choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313–14 (1981). In holding that its similar statute is constitutional, the Supreme Court of South Carolina emphasized that "insuring property, lives and interests in South Carolina constitutes a significant contact with this state." *Sangamo Weston, Inc. v. Nat'l Sur. Corp.*, 414 S.E.2d 127, 131 (S.C. 1992). Application of the Virginia statute, by contrast, would not vindicate any of those interests, because the relevant provisions of the insurance policies at issue insured the liabilities of a Maryland company, not any property in Virginia.

Thus, Maryland law governs these Maryland policies. On some issues, such as legal obligation to pay, Virginia case law is even clearer that Grimberg fails to state a claim. *Infra*

---

[6] In its opposition to Defendants' initial motion to dismiss, Grimberg cited no persuasive authority to support a contrary analysis. *See* Opp'n to Mot. to Dismiss, ECF No. 47, at 6–7 (citing *City Ins. v. Lynchburg Foundry*, No. 88-0178-L, 1989 WL 1102787, at *2 (W.D. Va. Apr. 25, 1989) (finding "no conflict among the potentially applicable laws of Virginia and Georgia"); *Lynchburg v. Ins. Co. of Ireland*, No. 87-0181-L, 1990 WL 1232911, at *1 (W.D. Va. Aug. 27, 1990) (involving "property loss" insurance issued to a Virginia municipality to insure Virginia property), *aff'd*, 937 F.2d 602 (4th Cir. 1991) (Table); *Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 808 (W.D. Va. 2007) (merely reciting statute and concluding it applies, with no analysis)).

§ II.C. Defendants nevertheless advocate for Maryland law, because the correct application of Virginia choice-of-law principles points to Maryland law. Regardless, as discussed below, Grimberg cannot state a claim under Maryland or Virginia law.

## II.    Grimberg cannot establish coverage under the Old Republic policies.

This motion addresses threshold barriers to coverage under the Old Republic policies, which in turn prevent Grimberg from stating a claim under the follow-form Excess Policies. The Old Republic policies have standard commercial general liability (CGL) insuring agreements:

   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply ….

   **b.**   This insurance applies to "bodily injury" and "property damage" only if … [t]he "bodily injury" or "property damage" is caused by an "occurrence"[.]

1AC, Ex. C, ECF No. 46-3, at 8; Ex. E, ECF No. 46-5, at 8. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same harmful conditions." *Id*. at 22. "Property damage" means "physical injury to tangible property, including all resulting loss of use of that property …; or [l]oss of use of tangible property that is not physical injured." *Id.*

As shown below, Grimberg's Amended Complaint fails to state a claim for three principal reasons. *First*, the costs of Grimberg's contractual obligation to remediate its work were not sums that Grimberg was "legally obligated to pay as damages." *Second*, Grimberg pleads no "occurrence," because it is no accident that Grimberg had to redo its defective work, which damaged no other non-defective work. *Third*, for similar reasons, Grimberg pleads no covered "property damage"—either "physical injury to tangible property" or "loss of use"—to which the insurance applies.

### A.    Under Grimberg's allegations, it seeks no sums that it became "legally obligated to pay as damages."

Grimberg's complaint bears little resemblance to a typical insurance coverage dispute. Ordinarily, a court engages in a two-stage analysis of two separate obligations: first, the duty to defend; second, the duty to indemnify. *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106 (Md. 2004). The duty to defend is broader, turning on whether the facts, as alleged in an underlying complaint, give rise to a potential for coverage under the insurance policy's text. *Id.* If there is a potential for coverage, an insurer's duty to indemnify the insured "depends on liability"—that is, whether the damages actually fall within the policy's coverage. *Id.* The analysis is the same under Virginia law. *Copp v. Nationwide Mut. Ins. Co.*, 692 S.E.2d 220, 224 (Va. 2010). "Although an insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty *to defend* because the allegations, even when taken as proved, would fall outside the policy's coverage." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) (Virginia law). Here, by contrast, the Navy sent a letter directing Grimberg to redo its work, and Grimberg redid its work.

Maryland decisions do not address whether a contractor, who simply complies with a contractual obligation to fix its work without a lawsuit, has become "legally obligated to pay [sums] as damages" within the CGL insuring agreement.

Three times, however, this Court has found that an insured's compliance with its contractual obligation is not such a legal obligation to pay.  *Elec. Motor & Contracting Co. v. Travelers Indem. Co. of Am.*, 235 F. Supp. 3d 781, 789 (E.D. Va. 2017); *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp. (Dragas II)*, 793 F. Supp. 2d 785, 795 (E.D. Va. 2011), *vacated on other grounds*, 497 F. App'x 313 (4th Cir. 2012); *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*

(*Dragas I*), 709 F. Supp. 2d 432, 439 (E.D. Va. 2010). Under these decisions, Grimberg never became legally obligated to pay damages to the Navy.

Despite this Court's holdings, Grimberg chose to file in this forum and to plead that Virginia law controls. 1AC ¶ 11. That choice has consequences. *First*, the Fourth Circuit recently emphasized that, when a party chooses a federal forum, it assumes the risk that the forum will adhere to its prior predictions of state insurance law. *Harriman v. Associated Indus. Ins. Co.*, 91 F.4th 724, 731 (4th Cir. 2024); *see id.* at 730–31 (applying D.S.C. predictions of South Carolina insurance law). *Second*, if the Court agrees with Defendants that Maryland law applies, the Court still will assume that Maryland law is the same as Virginia law, absent a contrary showing. *EPC MD 15*, 822 S.E.2d at 355 n.5; *Appalachian Reg'l Healthcare v. Cunningham,* 806 S.E.2d 380, 383 (2017).

There was no lawsuit against Grimberg. Rather, Grimberg presents a letter from the Navy that provides: "The ICF walls as currently constructed are noncompliant with [the contractual] standards. In order to meet these standards, the walls will need to be demolished and reconstructed. Provide a schedule for completion and a narrative of how [Grimberg] will comply with the contract within ten (10) calendar days of receipt of this letter." 1AC Ex. A, ECF No. 46-1 (citing FAR 52.246-12(f) ("The Contractor shall, without charge, replace or correct work found by the Government not to conform to contract requirements, unless in the public interest the Government consents to accept the work with an appropriate adjustment in contract price."). Grimberg alleges that it complied, and it now claims that the costs of compliance trigger the duty to indemnify.

Grimberg's obligation to "pay remediation costs" is not an "obligation to pay remediation costs 'as damages' under a [general liability] policy." *Electric Motor*, 235 F. Supp. 3d at 789.

When a contractor undertakes a "voluntary business decision" to remediate its own mistakes, that is not a legal obligation to pay damages. *Id.* (quoting *Dragas I*, 709 F. Supp. 2d at 439). Instead, Grimberg must show that its obligation to pay for remediation "was compelled by a 'final judgment or a settlement of a lawsuit, a strict liability statute, or other coercive legal obligation' to pay those sums." *Id.*

Grimberg offers the conclusory allegation that: "The Navy's letter was a claim for damages." 1AC ¶ 26. Such "[t]hreadbare recitals … supported by mere conclusory statements" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–9. Indeed, Grimberg's allegations of fact contradict that conclusory statement, asserting a mere contractual duty to undertake corrective work:

- "The Contractor shall, without charge, replace or correct work." 1AC ¶ 26 (quoting FAR 52.246-12)

- "The letter also required (*i.e.*, 'shall be reinstalled') Grimberg to reinstall other building elements." 1AC ¶ 27.

- "Pursuant to FAR, if directed by the Navy to undertake work, a general contractor like Grimberg has a duty to proceed under threat of default termination." 1AC ¶ 28.

These allegations mirror the amended complaint that the Court dismissed with prejudice in *Electric Motor*, 235 F. Supp. 3d at 790 ("But a contractual duty to incur the Repair Costs, without more, is not sufficient to bring the Repair Costs within the scope of the CGL Policy's insuring agreement. [The insured] must allege that it was "legally obligated to pay [the Repair Costs] as damages.").

This Court harmonized these principles with Maryland law in *Dragas II*. There, the insured homebuilder remediated defective Chinese drywall in homes to comply with its contractual obligations. 793 F. Supp. 2d at 788. The Court rejected the insured's reliance on *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021 (Md. 1993). It noted that "in cases of

environmental pollution and its regulation by state and federal entities, the courts have been more willing to find sums paid to remediate damage done to specific property or to pay into a state cleanup fund to be the result of 'legal obligation.'" *Id.* at 795 (citing *Bausch & Lomb*, 625 A.2d at 1031–32 ("[A]ll parties concede that the relevant environmental statutes, as outlined above, impose strict liability upon the owners of polluted property; the statutes further grant the State the authority to enforce the laws either by administrative order, by injunction, or by the State's own, direct remediation at the owner's expense.")).

Grimberg cannot convert its contractual obligation into a legal obligation to pay damages to the Navy. It identifies nothing in the Federal Acquisition Regulations that would confer on the Navy a special or immediate right to damages akin to a state or federal environmental agency's powers. "If the Contractor does not promptly replace or correct rejected work, the Government may (1) by contract or otherwise, replace or correct the work and charge the cost to the Contractor or (2) terminate for default the Contractor's right to proceed." FAR 52.246-12(g). The Government's invocation of contractual remedies may then lead to contested claims or cross-claims between the Government and the contractor. *United Partition Sys., Inc. v. United States*, 59 Fed. Cl. 627 (2004). But the Navy's invocation of FAR 52.246-12(f) does not resemble the environmental agency action in *Bausch & Lomb*. Like any other contracting party, the Navy must make a specific demand for damages, including a specific description of all debts the Navy contends are owed. FAR 32.604, FAR 49.402-7. If the demand goes unpaid, the Navy sends the debt to the Treasury to pursue a collection action. FAR 32.606 (citing 31 U.S.C. § 3711(g)(1)). No such sequence of events happened here. Grimberg simply fixed its work before the Navy made a specific demand for damages.

Thus, Grimberg never became legally obligated to pay damages to the Navy, and it cannot satisfy the CGL insuring agreement. This sequence of events, moreover, adds context to Defendants' other arguments. In the ordinary coverage action, the Court would begin its analysis with the allegations of an underlying complaint. *Walk*, 852 A.2d at 106; *Copp*, 692 S.E.2d at 224. Thus, the Court is left only with Grimberg's self-serving and changing allegations characterizing the Navy's claim. Even so, Grimberg offers nothing beyond threadbare, conclusory statements that do not meet its pleading obligations.

**B.      Under Grimberg's allegations, there was no "occurrence."**

Grimberg pleads no "occurrence" within the Old Republic insuring agreement. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same harmful conditions." 1AC, Ex. C, ECF No. 46-3, at 8; Ex. E, ECF No. 46-5, at 22. To satisfy the "occurrence" requirement, Grimberg would have to allege facts giving rise to a plausible claim that the defective ICF walls caused physical injury to some other non-defective work. *French*, 448 F.3d at 706; *Lerner v. Assur. Co. of Am.*, 707 A.2d 906, 912-13 (Md. App. Ct. 1998).

*French* held that, under Maryland law, the standard CGL insuring agreement "does not provide liability coverage to a general contractor to correct defective workmanship performed by a subcontractor."[7] 448 F.3d at 706. The Fourth Circuit divided the underlying plaintiffs' damages into two categories: the "defective EIFS [synthetic stucco] exterior" and "the damage to the nondefective structure and walls of the Frenches' home directly resulting from moisture intrusion

_____

[7] Like this case, *French* involved an action filed in this Court, seeking coverage for defective construction in Virgina under a policy issued to a Maryland-based contractor. The necessary implication of Grimberg's choice-of-law argument, *supra* § I, is that this Court, the Fourth Circuit, and the parties overlooked a statute mandating that Virginia law apply.

through the defective EIFS exterior." *Id.* at 703. "With respect to the first category," the Fourth Circuit held that "*Lerner* unequivocally answers the question. We hold that just as the defective application of the building's stone facade in *Lerner* did not constitute an 'accident,' and, therefore, not an 'occurrence' … so does the defective application of the EIFS exterior to the Frenches' home not constitute an 'accident,' and therefore, not an 'occurrence.'" *Id.* at 703 (citing *Lerner*, 707 A.2d at 912-13).

Only the second category of damages in *French* was caused by an "occurrence": "The nondefective structure and walls were damaged over a period of nearly five years when the defective EIFS exterior allowed harmful moisture and water penetration." *Id.* at 704–05. The Fourth Circuit emphasized that there could be an "occurrence" only because, as "delivered per the construction contract, the structure and walls of the Frenches' home were defect-free." *Id.* at 705. Thus, "our holding in favor of such coverage does not act as a source of warranty for contractually provided workmanship." *Id.*

Putting aside labels and conclusory allegations, as *Iqbal* requires, Grimberg alleges only the costs of replacing initially defective work within *French* category one (no "occurrence"), and alleges no damage to initially non-defective work within *French* category two (an "occurrence"). The Navy simply invoked Grimberg's contractual obligation to "replace or correct work found by the Government not to conform to contract requirements." FAR 52.246-12(f).

Grimberg's original complaint alleged that in "the course of demolishing and reconstructing the ICF walls, Grimberg incurred costs to repair or replace property damage to other conforming work of subcontractors." Compl. ¶ 28. The equivalent portion of the Amended Complaint alleges the same thing with less specificity, referring to "demolition and reconstruction work." 1AC ¶ 31.

23

Maryland law is clear that replacing defective work does not become an "occurrence" simply because the ensuing demolition and reconstruction work damages other property. In *Woodfin Equities Corp. v. Harford Mut. Ins. Co.*, 678 A.2d 116 (Md. App. Ct. 1996), *rev'd in part on other grounds,* 687 A.2d 652 (Md. 1997), the court held that the cost of replacing the insured's defective HVAC system was not covered, "because such damage was not caused by an 'occurrence.'" *Id.* at 131. Under those same principles, there was no further coverage for the resulting costs, including demolition:

> [A]ppellants may not recover for costs associated with tearing out walls, molding, and carpeting in order to repair and remove the HVAC units. Nor may appellants recover for the costs to replace and repair the defective HVAC systems. Similarly, appellants may not recover for the economic costs of paying consultants, or the economic costs associated with loss of management time. Indeed, because the property damage to the HVAC systems was not caused by an occurrence, appellants are not entitled to recover any of the economic or consequential damages that they may have sustained as a result of the property damage to the HVAC systems.

*Id.* at 131–32. Applying *Woodfin*, the Fourth Circuit held, in a case involving the insured's defective retaining wall, that "the cost of installing the new retaining wall and the cost of repairing the damage to the federally protected wetlands brought about by the installation of the new retaining wall are not covered losses under the Policies." *Travelers Indem. Co. of Am. v. Tower-Dawson, LLC*, 299 F. App'x 277, 282 (4th Cir. 2008).

Thus, contrary to Grimberg's conclusory allegations, there can be an "occurrence" only when the *defect itself* damages non-defective property, not when the *repair process* damages non-defective property. Grimberg therefore fails to state a claim under Maryland law, because it alleges no "occurrence."

The result would be the same under Virginia law. The Fourth Circuit has predicted that the Supreme Court of Virginia would follow *French*. *See Stanley Martin Cos., Inc. v. Ohio Cas. Grp.*, 313 F. App'x 609, 614 (4th Cir. 2009) (unpublished) ("Virginia insurance law is not

materially different from Maryland insurance law" on coverage for construction defect claims under general liability policies). *Stanley Martin* thus held that the insured's "obligation to repair or replace [its] defective trusses was not unexpected or unforeseen … and does not trigger a duty to indemnify," but that "any mold damage that spread beyond the defective trusses and the gypsum fire walls to nondefective components of the townhouses was an unintended accident, or an occurrence that triggered coverage." *Id.* Applying *Stanley Martin*, this Court found an occurrence when a contractor, hired to renovate one half a duplex, damaged the duplex's party wall, with resulting physical injury to the other unit, which the underlying plaintiffs owned. *Builders Mut. Ins. Co. v. ARC Constr., LLC*, No. 1:15-CV-00406-AJT-JFA, 2015 WL 13066125, at *3 (E.D. Va. July 2, 2015), *aff'd*, 648 F. App'x 341 (4th Cir. 2016). The underlying plaintiffs thus "allege[d] that the damage and injuries caused by the defective work to the party wall extended beyond the defective work itself to the ceilings and other aspects of their property" under *Stanley Martin*. *Id.*

Grimberg alleges no such damage beyond the defective work itself. The allegations in Grimberg's Amended Complaint are mere "labels and conclusions" that do not pass muster. *Twombly,* 550 U.S. at 555. It is well-established that Grimberg cannot rely on such "[t]hreadbare recitals … supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678–79. Dismissal is appropriate when the insured "simply pleads legal theories." *Lydick v. Erie Ins. Prop. & Cas. Co.*, 358 F. Supp. 3d 552, 559 (S.D.W. Va. 2019), *aff'd,* 778 F. App'x 271 (4th Cir. 2019). In this case, after Defendants moved to dismiss, Grimberg simply parroted the legal standard it must meet, while alleging no facts plausibly supporting such a conclusion.

| **Motion to Dismiss, ECF No. 23-1** | **Amended Complaint, ECF No. 46** |
|---|---|
| "It is not enough that remedying defective work causes other damage; it must be the defective work itself that damaged other parts of the construction." Memo. 13. | "The defective ICF walls damaged and/or rendered unusable, other parts of the Project's integrated, primary framing system." *Compare* Compl. ¶ 23 *with* 1AC ¶ 24. |
| "Grimberg specifically alleges that remedying the defective ICF walls caused other damage." Memo. 13–14. | "28~~31. In the course of demolishing and reconstructing the ICF walls,~~ PCS's defective work caused damage to other conforming, non-defective work at the Project by other subcontractors." *Compare* Compl. ¶ 28 *with* 1AC ¶ 31. |

The Navy's letter simply stated that the ICF walls as "currently constructed" were "non-compliant." IAC, Ex. 1, ECF No. 46-1, at 1. Its concerns were exclusively with the ICF walls: "[S]ignificantly more issues of nonconformance with the contract requirements have been identified … [including] deficient reinforcing steel within the ICF walls." *Id*. The Navy asserted no damage to non-defective work, and the Amended Complaint alleges no facts plausibly giving rise to such an inference.[8] Instead, the factual allegations, including the exhibits incorporated by reference to the Complaint, show only an effort to turn the coverage into "a source of warranty for contractually provided workmanship," contrary to governing law. *French*, 448 F.3d at 705.

### C.    Under Grimberg's allegations, there was no "property damage."

Under the same authorities discussed in the previous section, Grimberg makes no plausible allegations of "property damage" within the Old Republic's insuring agreement. The policies define "property damage" as "physical injury to tangible property, including all resulting

---

[8] Nor does Grimberg attach material from which the defendants or this Court could discern the nature or cause of the damage. *Cf. Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 709 F. Supp. 2d 441, 448 (E.D. Va. 2010). There is no information in the complaint or integral to the complaint that supports Grimberg's legal conclusions about coverage.

loss of use of that property" or [l]oss of use of tangible property that is not physical injured."

1AC, Ex. C, ECF No. 46-3, at 22; Ex. E, ECF No. 46-5, at 22.

"Physical injury to tangible property" does not include the repair and replacement of

initially defective property, even when the process of repair and replacement damages non-

defective property. *Woodfin*, 678 A.2d at 132 n.8 ("Voluntarily pulling up carpeting or breaking

through dry-wall to access the HVAC units is not property damage; it is the cost incurred in

replacing and repairing the HVAC systems"); *see Tower-Dawson*, 299 F. App'x at 282 (applying

*Woodfin*). It is unavailing for Grimberg to cite the Navy's "major concern" with the building's

"structural integrity." 1AC ¶ 27 (citing Ex. A, at 2). The Supreme Court of Maryland has held

that "costs incurred by [a contractor] to avoid imminent catastrophic damage to the property of

others are not recoverable under the terms of the Comprehensive General Liability Policy." *W.M.*

*Schlosser Co. v. Ins. Co. of N. Am.*, 600 A.2d 836, 841 (Md. 1992). Although the measures taken

in *W.M. Schlosser* were intended to prevent imminent collapse "there was no occurrence within

the meaning of the policy that caused damage to the persons or property of others. The action

taken by [the contractor] was intended to prevent the type of harm the policy would have

covered." *Id.* Thus, even had the Navy told Grimberg that collapse was imminent, there still

would be no coverage for replacing the walls.

Nor does Grimberg allege any damages because of "loss of use," which is the other prong

of the "property damage" definition. "'Loss of use' of property is different from 'loss' of

property. To take a simple example, assume that an automobile is stolen from its owner. The

value of the 'loss of use' of the car is the rental value of a substitute vehicle; the value of the

'loss' of the car is its replacement cost." *M Consulting & Exp., LLC v. Travelers Cas. Ins. Co. of*

*Am.*, 2 F. Supp. 3d 730, 737 (D. Md. 2014). Grimberg's Amended Complaint adds an allegation

that parts of the school were "rendered unusable" by the defect in the ICF walls, 1AC ¶ 24. The

Navy's letter, however, demanded only that Grimberg replace the walls. IAC Ex. 1, ECF No. 46-

1. It demanded no "loss of use" damages, such as the cost of renting other space to serve as

school facilities during the replacement process.

Even had the Navy made such a claim, Exclusion m, "Damage To Impaired Property Or

Property Not Physically Injured," would bar coverage for such loss of use:

> "Property damage" to "impaired property" or property that has not been
> physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product"
>     or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a
>     contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of
> sudden and accidental physical injury to "your product" or "your work" after it
> has been put to its intended use.

1AC Ex. C, ECF No. 46-3, at 12.

Grimberg's loss-of-use allegation of matches this language perfectly. Other parts of the

school were "property that has not been physically injured" because of "[a] defect, deficiency, or

inadequacy" in Grimberg's work[9] and the resulting "delay … to perform a contract … in

accordance with its terms." *See Corn Plus Co-op. v. Cont'l Cas. Co.*, 516 F.3d 674, 680 (8th Cir.

2008) (the insured's "defective welds" rendered a "piping system … less useful," so the impaired

property exclusion "bar[s] coverage").

Exclusion m applies to any loss of use, because Grimberg alleges no "sudden and

accidental physical injury" to property other than Grimberg's work "after" the school was "put to

---

[9] "Your work" means "[w]ork or operations performed by [Grimberg] *or on [Grimberg's]
behalf*," so it includes work by Grimberg's subcontractors. 1AC Ex. C, ECF No. 46-3, at 23.

its intended use." *Schnabel Found. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CV PX-16-0895, 2018 WL 2967384, at *7 (D. Md. June 12, 2018) ("the events triggering the claimed losses occurred during [the contractor's] work, not after the work had been put to its purpose"), *aff'd,* 780 F. App'x 5 (4th Cir. 2019). In *Woodfin*, the only "property damage" was the loss of use of the hotel's guest suites—and the resulting loss of income—when the insured's HVAC system catastrophically burnt out. 678 A.2d at 134. The court stressed that "[un]like the HVAC systems, the guest rooms are not the work product of the insured" HVAC contractor, and that exception to Exclusion m applied because the breakdown occurred after the hotel had put the HVAC system to its intended use. *Id.* at 133–34.

Unlike the HVAC contractor in *Woodfin*, Grimberg alleges that its contractual undertaking included the entire school—a "fully functioning facility"—and that "Grimberg's performance of the contract with the Navy is ongoing, and the Project is not yet complete." 1AC ¶ 15. Thus, there was no physical injury to, or loss of use of, anything other than Grimberg's work, and Exclusion m would apply in any event. Grimberg thus pleads no "property damage."

For all of these reasons, Grimberg cannot show coverage under the Old Republic policies, and thus it cannot satisfy the Excess Policies' insuring agreements.

## III.   Grimberg alleges no plausible claim for breach of the implied covenant of good faith and fair dealing.

Count III asserts "breaches [of the insurers'] implied duty of good faith and fair dealing." 1AC ¶¶ 64–70. Even if Grimberg's declaratory and contractual claims at Counts I and II could pass muster under *Iqbal* and *Twombly*, Count III still would fail. Under governing Maryland law, no such common law claim exists. Under Virginia law, Grimberg still would fail to state a claim.

Just as Maryland law governs interpretation of the policies, Maryland law governs Grimberg's claim for lack of good faith and fair dealing. *Cecilia Schwaber Tr. Two v. Hartford*

*Acc. & Indem. Co.*, 437 F. Supp. 2d 485, 488 (D. Md. 2006) (applying same common law choice-of-law principles that Virginia applies). Maryland recognizes no common-law claim for bad-faith insurance adjusting. *Hartz v. Liberty Mut. Ins. Co.*, 269 F.3d 474, 476 (4th Cir. 2001) ("Maryland has made a considered decision not to recognize a tort action for bad faith failure to settle with an insured."); *Harris v. Keystone Ins. Co.*, No. 1:13-cv-2839, 2013 WL 6198160, at *2 (D. Md. Nov. 26, 2013); *Johnson v. Fed. Kemper Ins. Co.*, 536 A.2d 1211, 1213 (Md. App. Ct. 1988). Grimberg's exclusive remedy would be under a statute enacted in 2007. Md. Code Ann., Cts. & Jud. Proc. § 3-1701; Md. Code Ann., Ins. § 27-1001. Grimberg's Amended Complaint continues to plead no claim under the Maryland statute, not even in the alternative.

Count III, predicated on an implied common-law duty of good faith, must be dismissed because no such claim exists under Maryland law. In any event, had Grimberg tried to assert a claim under Maryland's good-faith statute, a "civil action under section 3-1701 only allows recovery of actual damages under the insurance policy, and no actual damages under an insurance policy can be claimed by one who is not entitled to coverage under the policy." *All Class Constr., LLC v. Mut. Benefit Ins.*, 3 F. Supp. 3d 409, 417 (D. Md. 2014). Because there is no coverage, there could be no claim under the Maryland statute.

Even under Virginia law, Count III would still fail to state a claim. Aside from the merits of Grimberg's coverage claims at Counts I and II, the "Virginia Supreme Court has never recognized the existence of a separate tort duty that an insurer owes its insured." *Selective Ins. Co. of the Southeast v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 412 (E.D. Va. 2020). Grimberg also makes no plausible allegations of consequential damages separate from its asserted contractual damages. *See Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL 2857191, at *4 (E.D. Va. July 21, 2008) (dismissing a good-faith-and-fair-dealing

claim with no plausible allegations of consequential damages). Any remedy for Defendants' alleged lack of good faith would be for attorneys' fees under Va. Code § 38.2-209. But "Section 38.2-209 does not create an independent cause of action," and a party "may seek relief under Section 38.2–209 only after a judgment is entered against the insurer." *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 654 (E.D. Va. 2009) (Trenga, J.). Thus, Count III must be dismissed, and any Section 38.2-209 claim is premature. *Id.*

Moreover, a Section 38.2-209 fee claim arises only when an insurer's "position is [ ] so unreasonable as to demonstrate bad faith." *Tiger Fibers*, 594 F. Supp. 2d at 655. Defendants' position is not merely reasonable; it is correct. *ACAC Downtown, LLC v. Cincinnati Ins. Inc.*, 660 F. Supp. 3d 529, 537 (W.D. Va. 2023) ("there cannot be a plausible claim for breach of the implied covenant of good faith and fair dealing where the policy does not afford coverage"). And, even when an insurer is not entitled to dismissal or summary judgment on the coverage question, its position cannot be sufficiently unreasonable if "[t]he coverage questions raised in this case" are not "settled" in the insured's favor "under Virginia law." *Tiger Fibers*, 594 F. Supp. 2d at 655. Indeed, an "implied breach of good faith and fair dealing claim cannot be properly pled if a plaintiff seeks redress for an implied covenant claim merely for Defendant's unfavorable exercise of its explicit contractual rights." *Johnson v. Nationwide Mut. Ins. Co.*, No. 6:22-cv-78, 2023 WL 3586438, at *3 (W.D. Va. May 22, 2023) (appeal filed).

Grimberg cannot meet this threshold. In support of dismissal of Counts I and II, Defendants have cited multiple on-point authorities under both Virginia and Maryland law. There is simply no scenario in which Grimberg can establish that the law was *settled in its favor*.[10] Grimberg vaguely alleges a failure to investigate, without identifying a single material

---

[10] To the contrary, the law as demonstrated above, is settled in Defendants' favor.

fact that such an investigation would have revealed. The Supreme Court held there were no plausible allegations of corporate malfeasance when there is "an obvious alternative explanation." *Twombly*, 550 U.S. at 567. The obvious alternative explanation here, reviewing the Amended Complaint's allegations and the exhibits incorporated into it, is that Defendants concluded that ample authority supported a denial of coverage on the facts that Grimberg presented to them.

For all of these reasons, the Amended Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

This Court should dismiss this action with prejudice.

Respectfully submitted,

*/s/ Thomas S. Garrett*
Thomas S. Garrett (VSB No: 73790)
HARMAN CLAYTOR CORRIGAN &
WELLMAN, P.C.
4951 Lake Brook Drive, Suite 100
Glen Allen, Virginia 23060-9272
Phone: (804) 747-5200
Fax:    (804) 747-6085
tgarrett@hccw.com

Ezra S. Gollogly (*pro hac vice*)
Joseph Dudek (*pro hac vice*)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax:    (410) 539-1269
egollogly@kg-law.com

*Attorneys for XL Specialty and XL America*