**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Arlington Division**

| | |
|---|---|
| JOHN C. GRIMBERG COMPANY, INC., *Plaintiff*, v. XL SPECIALTY INSURANCE COMPANY *et al.*, *Defendants*. | No. 1:23-cv-01690 |

**OPPOSITION TO
PLAINTIFF JOHN C. GRIMBERG COMPANY, INC.'S
MOTION TO ALTER OR AMEND THE COURT'S JUNE 6, 2024 ORDER**

Thomas S. Garrett (VSB No: 73790)
HARMAN CLAYTOR CORRIGAN &
WELLMAN, P.C.
4951 Lake Brook Drive, Suite 100
Glen Allen, Virginia 23060-9272
Phone: (804) 747-5200
Fax:     (804) 747-6085
tgarrett@hccw.com

Ezra S. Gollogly (*pro hac vice*)
Joseph Dudek (*pro hac vice*)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax:     (410) 539-1269
egollogly@kg-law.com

*Attorneys for XL Specialty and XL America*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 5

LEGAL STANDARD ..................................................................................................................... 6

PROCEDURAL HISTORY ............................................................................................................ 7

ARGUMENT .................................................................................................................................. 8

    I.    The proposed Second Amended Complaint proves yet again that amendment would be futile. ................................................................................................................8

        A.    Physical Injury to Tangible Property Caused by an Occurrence ..........................8

        B.    Loss of Use of Tangible Property ......................................................................10

    II.    Grimberg's legal theory is also wrong. .........................................................................12

    III.    Despite considerable effort, Grimberg's amendments still do not plead the existence of a claim for damages. ................................................................................14

CONCLUSION ............................................................................................................................. 16

## TABLE OF AUTHORITIES

**CASES**

*Amtrol, Inc. v. Tudor Ins.*,
 No. CIV.A.01-10461-DPW, 2002 WL 31194863 (D. Mass. Sept. 10, 2002) .......................... 13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................................. 7

*Corn Plus Co-op. v. Cont'l Cas. Co.*,
 516 F.3d 674 (8th Cir. 2008) .................................................................................................. 11

*Daulatzai v. Maryland*,
 97 F.4th 166 (4th Cir. 2024) ..................................................................................................... 6

*Depositors Ins. v. W. Concrete, Inc.*,
 No. CV GLR-16-1018, 2017 WL 3383039 (D. Md. Aug. 4, 2017) .................................... 6, 13

*Elec. Motor & Contracting v. Travelers Indem. Co. of Am.*, 235 F. Supp. 3d 781 (E.D.
 Va. 2017) ................................................................................................................................ 15

*French v. Assurance Co. of Am.*,
 448 F.3d 693 (4th Cir. 2006) .................................................................................................. 10

*Hotel Roanoke Conf. Ctr. Comm'n v. Cincinnati Ins.*,
 303 F. Supp. 2d 784 (2004) .................................................................................................... 14

*Johnson v. Oroweat Foods Co.*,
 785 F.2d 503 (4th Cir. 1986) .................................................................................................... 6

*M Consulting & Exp., LLC v. Travelers Cas. Ins. of Am.*,
 2 F. Supp. 3d 730 (D. Md. 2014) ............................................................................................ 11

*McCleary-Evans v. Md. Dept. of Transp., State Hwy. Admin.*,
 780 F.3d 582 (4th Cir. 2015) .................................................................................................... 7

*Nautilus Ins. v. Strongwell Corp.*,
 968 F. Supp. 2d 807 (W.D. Va. 2013) .................................................................................... 14

*Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp.*,
 914 F.3d 213 (4th Cir. 2019) .................................................................................................... 6

*Schnabel Found. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
 No. CV PX-16-0895, 2018 WL 2967384 (D. Md. June 12, 2018) ......................................... 12

*St. Paul Guardian Ins. v. Walsh Constr. Co.*,
   99 F.4th 1035 (7th Cir. 2024) .................................................................................................. 13

*USF&G v. Nevada Cement*,
   561 P.2d 1335 (Nev. 1977) ...................................................................................................... 14

*Westchester Modular Homes of Fairfield County v. Arbella Prot. Ins.*,
   224 Conn. App. 526 (2024) ..................................................................................................... 13

4

## INTRODUCTION

Plaintiff John C. Grimberg Company, Inc. ("Grimberg") filed its original complaint last December, alleging that its insurers should have to pay for its own faulty construction of certain insulated concrete form ("ICF") walls. ECF No. 1. In response, Defendants XL Insurance America, Inc. ("XL America") and XL Specialty Insurance Company ("XL Specialty") moved to dismiss. ECF Nos. 22, 23. Their motion explained, among other things, that for Grimberg to state a claim, Grimberg must allege facts showing that its defective work inside the ICF walls somehow caused physical injury to other non-defective work at the construction site. ECF No. 23 at 13.

In response, Grimberg amended its complaint. ECF No. 46. But Grimberg's amended complaint merely recited back the legal test set out in the motions to dismiss. That recitation was almost verbatim. For example, Grimberg asserted without any explanation that the "defective work caused damage to other conforming, non-defective work at the Project by other subcontractors." *Id*. ¶ 31. Because Grimberg's amendment "simply parroted the legal standard it must meet, while alleging no facts plausibly supporting such a conclusion," XL America and XL Specialty again moved to dismiss. ECF No. 55 at 25. After finding that Grimberg's amendment was "precisely the sort of 'unadorned, the-defendant-unlawfully-harmed-me accusation' that is unable, without more, to overcome a 12(b)(6) motion," this Court dismissed the action without granting leave to amend again. ECF No. 79 at 12.

Grimberg now wants to amend again to add yet more conclusory pleading, *e.g.*: "there was existing physical damage or loss of use to other parts of the building's primary structural framing system caused by the defective ICF walls." ECF Nos. 81-17 at 13. As before, these new sentences plead the legal conclusion. Grimberg all but concedes as much, arguing that its new complaint "merely adds an additional theory of recovery to the facts already pled." ECF No. 81

5

at 7. This Court should reject that effort for the same reason it dismissed the first amended complaint.

Grimberg hopes to save its third conclusory complaint by offering this Court a legal theory it discussed in its earlier filings. Under this theory, the mere fact that the ICF walls were structurally unsound meant that the framing system sitting atop them was also structurally unsound, rendering the entire structure "physically injured." ECF No. 81 at 11 ("the framing system was physically injured as it did not have its designed structural integrity"). In other words, because the rest of the structure *could have been* injured by high winds or seismic activity, it *was* injured. But this argument was rejected years ago in *Depositors Ins. v. W. Concrete, Inc.*, No. CV GLR-16-1018, 2017 WL 3383039, at *11 (D. Md. Aug. 4, 2017). And for good reason: The mere fact that something "<u>could</u> sustain physical injury" does not mean that it <u>did</u> sustain physical injury. *Id.* (emphasis in original).

This Court should deny Grimberg's motion and end this litigation.

## LEGAL STANDARD

The parties agree that when a motion seeks vacatur under Rule 59(e) and amendment under Rule 15(a), the legal standard collapses into a routine amendment inquiry. *Daulatzai v. Maryland*, 97 F.4th 166, 177 (4th Cir. 2024); *see* Mot. 4–5. Such a motion "should [be] evaluated … 'under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." *Id.* That is, this Court should deny leave to amend if "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Amendment is futile when the as-amended complaint "would not survive a motion to dismiss." *Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

6

Grimberg's complaint would not survive a motion to dismiss, because Grimberg still has not satisfied the legal standard governing motions to dismiss. To survive a motion to dismiss, a pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *McCleary-Evans v. Md. Dept. of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)) (cleaned up). A complaint must include "factual allegations sufficient to raise a right to relief above the speculative level." *Id.* "Rule 8(a)(2) requires that 'a complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face' in the sense that the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**PROCEDURAL HISTORY**

| | |
|---|---|
| Dec. 11, 2023: | Grimberg files its initial complaint. ECF No. 1. |
| Feb. 12, 2024: | All defendants move to dismiss. ECF Nos. 22–25. |
| March 4, 2024: | Grimberg opposes the motions to dismiss and files its amended complaint. ECF Nos. 46–47. The parties agreed to withdraw the pending motions and file new motions to dismiss the amended complaint. ECF No. 51. |
| March 7, 2024: | The Court enters a scheduling order, setting the deadline for Plaintiffs' expert disclosures for May 13, 2024. ECF No. 49. |
| March 28, 2024: | All defendants move to dismiss the amended complaint. ECF Nos. 54–57. |
| May 13, 2024: | Grimberg's time to designate experts elapses with no expert designations. *See* ECF No. 49. |
| June 6, 2024: | This Court dismisses the action. ECF No. 79. |
| July 3, 2024: | Grimberg moves to alter this Court's order and for leave to file an amended complaint. ECF No. 81. |

# ARGUMENT

## I. The proposed Second Amended Complaint proves yet again that amendment would be futile.

At this point, the parties and the Court agree on the legal test governing occurrence-based insurance coverage at the motion-to-dismiss stage: Grimberg must plausibly allege facts showing that it was "legally obligated to pay" certain "sums" "as damages because of … 'property damage,'" and that the property damage was "caused by an 'occurrence.'" Because this case arises from Grimberg's defective work, Grimberg has only two ways of pleading property damage caused by an occurrence. *First*, Grimberg could allege facts showing that its defective work caused physical injury to tangible property other than its own defective work—what some courts call "resultant damage." Memo. on Mot. to Dismiss, ECF No. 55, at 22; Opp'n, ECF No. 64, at 21, 23, 24; Mem. & Order, ECF No. 79, at 5–6. *Second*, Grimberg could allege facts showing that its defective work caused covered "loss of use" of tangible property. Memo. 27–29; Opp'n 24; Order 4, 13. But as this opposition explains, Grimberg's proposed Second Amended Complaint does neither. This Court should deny Grimberg's motion to amend as futile.

### A. Physical Injury to Tangible Property Caused by an Occurrence

As this Court correctly explained, Grimberg cannot satisfy its burden to allege physical injury to tangible property caused by an occurrence by reciting back the legal test; it must plead underlying facts. Order 6–7. Grimberg cannot, for example, satisfy the standard by pleading that its defective ICF walls "caused damage to other conforming, non-defective work." Order 12. It must instead plead the facts—*what* physical damage was allegedly inflicted on other work, and *how* did the ICF walls allegedly cause such damage? Indeed, it was because Grimberg had merely repeated back the legal test over and over that this Court dismissed this action in the first place. Order 13 (citing Amend. Compl. ¶¶ 24, 45, 55, 59, 65).

Grimberg did not heed this Court's advice. Setting aside other irrelevant amendments,[1] Grimberg's new language in the Second Amended Complaint mostly parrots back the same legal test more times. For example, Grimberg added the following language:

- "PCS's failure to fix the vertical rebar in place unexpectedly and severely compromised the ICF walls and also caused present existing physical injury and/or loss of use to the other parts of the building's primary structural framing system." ECF No. 81-17 at 9;

- "PCS's defective ICF walls caused the loss of the structural integrity and/or loss of use of the other parts of the primary structural framing system." *Id*.

- "there was existing physical damage or loss of use to other parts of the building's primary structural framing system caused by the defective ICF walls." *Id*. at 13.

- "This property that was part of the primary structural framing system was physically injured because it could no longer carry the designed loads and/or suffered a loss of use due to the defective ICF walls. The other conforming, nondefective work that was damaged by the defective ICF walls was paid for and owned by the Navy." *Id*. at 15.

- "the Navy was involved in the remediation of damage caused by PCS's defective ICF walls." *Id*.

- "This damage constitutes "property damage" as physically injured property and/or property that suffered a loss of use." *Id*. at 16.

- "It was PCS's defective wall system that caused the above-described property damage to the non-defective parts of the primary structural framing system, not Grimberg's work to repair and reconstruct the ICF walls." *Id*.

- "This unexpected and unintended property damage to otherwise non-defective work of other subcontractors (owned by the Navy) was caused by PCS's defective ICF walls." *Id*.

None of this sufficiently pleads a claim under the well-established test set out in *Iqbal*. Order 12.

Yet Grimberg tells this Court that these allegations are a meaningful improvement in its complaint. ECF No. 81 at 11. In support of its claim that the proposed amendment "alleges facts

---

[1] Grimberg's proposed Second Amended Complaint also abandons claims against Arch Specialty Insurance Company and Watford Specialty Insurance Company, *see* ECF No. 81-17 at 2 (deleting ¶¶ 5, 6); adds legal analysis of the Federal Acquisition Rules (FAR), *see* ECF No. 81-17 at 3 (adding ¶ 8); and tinkers with the precise language of the complaint with little or no legal effect, *see* ECF No. 81-17 at 4 (changing "a school" to "a middle and high school").

9

establishing there was an 'occurrence' under Defendants' policies," Grimberg points to its allegations that "PCS's negligently installed or constructed ICF walls caused unexpected present existing physical injury to the rest of the School's primary structural framing system." Order 10–11. But these allegations do not cure the defect that led to dismissal in the first place.

Ultimately, Grimberg can allege only that its ICF walls were defective, not that the defects caused resultant damage. But Grimberg is entitled to no coverage for curing its own defective work. *French v. Assurance Co. of Am.*, 448 F.3d 693, 703 (4th Cir. 2006) ("defective [work] did not constitute an 'accident,' and, therefore, not an 'occurrence'"); *see* Memo., ECF No. 55, at 23.

### B.   Loss of Use of Tangible Property

Because the relevant insurance policies define "property damage" to include certain kinds of "loss of use" property, Grimberg again alleges in conclusory fashion "loss of use to other parts of the building." ECF No. 81-17 at 9, 13; *see id*. at 15, 16 ("suffered a loss of use"); *id*. at 23 (reciting the policy definition of "property damage"). Grimberg's argument appears to be that because of the defects in the ICF walls, the Navy lost use of the other parts of the structure that sat atop the ICF walls. ECF No. 81 at 14. But the Navy never lost use of anything, because as Grimberg alleges, the Navy had not started using the school. *See* ECF No. 81-17 at 14 (explaining that the Navy stopped ongoing work to resolve the ICF wall problem). There simply is no loss of use alleged.

And in any event, as the XL Defendants' motion to dismiss explained, such loss of use is excluded from coverage. ECF No. 55 at 28. *First*, Grimberg's Second Amended Complaint still does not allege that the Navy made a claim against Grimberg (for damages other otherwise) related to its loss of use of the other parts of the school. Grimberg does not allege, for example, that the Navy asked for money to rent another structure while the first structure was unusable.

*See M Consulting & Exp., LLC v. Travelers Cas. Ins. of Am.*, 2 F. Supp. 3d 730, 737 (D. Md. 2014) (explaining that damages for renting comparable property are a classic example of loss-of-use damages). In short, Grimberg fails to allege that the Navy demanded "loss of use" damages, such as the cost of renting other space to serve as school facilities during the replacement process.

*Second*, as the XL Defendants have already explained, Exclusion m, "Damage To Impaired Property Or Property Not Physically Injured," would bar coverage for any such claim. The exclusion provides:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

1AC Ex. C, ECF No. 46-3, at 12. Grimberg's loss-of-use allegation matches this language perfectly. Other parts of the school, including those that sat atop the ICF walls, were "property that has not been physically injured" because of "[a] defect, deficiency, or inadequacy" in Grimberg's work[2] and the resulting "delay … to perform a contract … in accordance with its terms." *See Corn Plus Co-op. v. Cont'l Cas. Co.*, 516 F.3d 674, 680 (8th Cir. 2008) (the insured's "defective welds" rendered a "piping system … less useful," so the impaired property exclusion "bar[s] coverage").

---

[2] "Your work" means "[w]ork or operations performed by [Grimberg] *or on [Grimberg's] behalf*," so it includes work by Grimberg's subcontractors. 1AC Ex. C, ECF No. 46-3, at 23.

11

To get past this exclusion, Grimberg would have to allege facts showing a "sudden and accidental physical injury" to damage other than the ICF walls that occurred "after" the school was "put to its intended use." *Schnabel Found. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. CV PX-16-0895, 2018 WL 2967384, at *7 (D. Md. June 12, 2018), *aff'd,* 780 F. App'x 5 (4th Cir. 2019). None of Grimberg's complaints have alleged these facts, because Grimberg cannot plead them in good faith. As the rest of Grimberg's complaint makes clear, work at the project was ongoing at all relevant times; the school had not been put to its intended use.

In sum, even though Grimberg alleges several times that it suffered a "loss of use," it has not alleged facts showing any covered damages arising from loss of use.

## II. Grimberg's legal theory is also wrong.

The rest of Grimberg's amendments are factual and legal claims about its legal theory. Grimberg argues that because the ICF walls were connected to a larger structural framing system, defects in the ICF walls necessarily rendered the rest of the framing system structurally unsound. ECF No. 81 at 11–15. Working mostly from an online dictionary and a 50-year-old Nevada case, Grimberg explains that because the ICF walls rendered the entire framing structurally unsound, it was all "physically injured." *Id*.

But sitting on top of defective concrete slabs is not itself a physical injury; at most, sitting atop defective ICF walls created a risk of future injury. Grimberg "offers no [factual allegations] that this 'structural instability' had manifested itself in any physical way." *St. Paul Guardian Ins. v. Walsh Constr. Co.*, 99 F.4th 1035, 1041 (7th Cir. 2024).[3] If a construction defect "create[s] the

---

[3] This case from the U.S. Court of Appeals for the Seventh Circuit is not binding precedent in this Court, but it is an especially thorough and persuasive treatment of these issues. Its holding also represents a growing consensus that compromised structural integrity cannot bring a construction defect claim within the scope of CGL coverage. *See generally Westchester Modular*

potential for future damage to the property of others, but where such damage has yet to manifest, there is no 'property damage' that triggers coverage under the CGL policies." *Id*. To hold otherwise "would mean that [Grimberg] could perform defective work without consequence, knowing that [it] could later recoup any resulting adverse judgments under their CGL policies. That can hardly be what the contracting parties intended." *Id*.

A similar argument failed in *Depositors Ins. v. W. Concrete, Inc.*, No. CV GLR-16-1018, 2017 WL 3383039 (D. Md. Aug. 4, 2017). There, an expert report from the underlying action explained that cracking in concrete exposed the rebar inside to corrosion. 2017 WL 3383039, at *11. But the report did not allege that the rebar *had been* corroded, and it "never state[d] that anyone observed corrosion." *Id*. So although the rebar was *vulnerable* to physical injury, it had not been physically injured. *Id*. This was an implementation of the more general rule that "costs incurred by [a contractor] to avoid imminent catastrophic damage to the property of others are not recoverable under the terms of the Comprehensive General Liability Policy." *W.M. Schlosser Co. v. Ins. Co. of N. Am.*, 600 A.2d 836, 841 (Md. 1992).

So too here. Grimberg alleges not that other parts of the superstructure were bent or broken, but that they were *vulnerable*. The "ICF walls" had lost "their ability to resist the anticipated wind, blast and seismic loads." ECF No. 81-17 at 9. That created an "unacceptable danger of injury or death to the occupants of the building due to the failure of the building's primary structural system." *Id*. at 10. In other words, *if* a bomb had gone off or an earthquake had struck, the building (and probably anyone inside) would have been physically injured. But a bomb never fell and an earthquake never arrived. The broader framing system was not "hurt,

---

*Homes of Fairfield County v. Arbella Prot. Ins.*, 224 Conn. App. 526, 531-32 (2024); *Amtrol, Inc. v. Tudor Ins.*, No. CIV.A.01-10461-DPW, 2002 WL 31194863 (D. Mass. Sept. 10, 2002).

damage[d], or los[t]." ECF No. 81 (Grimberg quoting Merriam-Webster's dictionary online). Nor did the ICF walls "impair the soundness of" the other structural elements. *Id*. The steel beams and joists sitting atop the ICF walls, when considered alone, were perfectly sound. See ECF No. 81-17 at 5 (describing the structural framing system). The only reason that the system as a whole could be considered unsound was because the ICF walls were themselves defective.[4]

And as the XL Defendants explained already, Grimberg's authorities do not say otherwise. ECF No. 75 at 11. In *Nevada Cement*[5] and *Nautilus*,[6] the insured was a product manufacturer (cement and fiberglass) whose product incorporated into and physically damaged other parts of the building. But here, the ICF walls did not cause any physical injury to any other part of the building. They were just sitting there with internal defects but no tangible physical effect on any other element of the project.

In sum, Grimberg's new factual allegations do not show that the ICF walls ever caused tangible injury to physical property caused by an occurrence.

### III. Despite considerable effort, Grimberg's amendments still do not plead the existence of a claim for damages.

Even though its original complaint was dismissed for lack of property damage caused by an occurrence, the Second Amended Complaint and Grimberg's motion to alter the judgment

---

[4] Virginia law would reach the same result. Lacking "Virginia cases [that] directly address this issue," the Western District of Virginia found Maryland law persuasive. *Hotel Roanoke Conf. Ctr. Comm'n v. Cincinnati Ins.*, 303 F. Supp. 2d 784, 787 (2004), aff'd, 119 Fed. Appx. 451 (4th Cir. 2005). Applying that law, it held that when one subcontractor's defective work is not "unexpected" and thus not an "occurrence," even when that defective work causes "major structural problems." *Id*. at 787–88. This is the "majority view" and "likely to be accepted by Virginia." *Id*. at 789.

[5] 561 P.2d 1335, 1336–37 (Nev. 1977).

[6] 968 F. Supp. 2d 807, 816 (W.D. Va. 2013).

dedicate significant attention to the lack of a claim for damages[7] by the Navy against Grimberg. *See* ECF No. 81 at 15–21; ECF No. 81-17 at 3, 8, 13–15. But at bottom, nothing has changed: Grimberg still alleges that the Navy "coercively" forced it to perform remedial work; and the Navy never sought *damages* in the first place. This Court need not reach this issue, but if it does, it should hold that Grimberg lacks a claim for damages and thus has no coverage.

Grimberg's obligation to "pay remediation costs" is not an "obligation to pay remediation costs 'as damages' under a [general liability] policy." *Elec. Motor & Contracting v. Travelers Indem. Co. of Am.*, 235 F. Supp. 3d 781, 789 (E.D. Va. 2017). A contractor's obligation to perform its contract (and pay to remediate its own work) amounts to a claim for damages only when that work "was compelled by a 'final judgment or a settlement of a lawsuit, a strict liability statute, or other coercive legal obligation' to pay those sums." *Id*. Unlike environmental protection statutes that impose strict liability for failure to remediate, the FAR provisions that Grimberg relies on lack any strict liability provision. Like any other contracting party, the Navy must make a specific demand for damages, including a specific description of all amounts the Navy contends are owed. FAR 32.604, FAR 49.402-7. If the demand goes unpaid, the Navy sends the debt to the Treasury to pursue a collection action. FAR 32.606 (citing 31 U.S.C. § 3711(g)(1)). No such sequence of events happened here. Grimberg simply fixed its work before the Navy made a specific demand for damages.

In sum, even if Grimberg had cured the defect that led to dismissal of its first amended complaint, dismissal of the second amended complaint would still be appropriate, because the newest complaint still does not allege that the Navy ever sought damages from Grimberg.

---

[7] Grimberg's preferred dictionary defines "damages" in this context as "compensation in money imposed by law for loss or injury." Merriam-Webster Dictionary Online, *damage* (last accessed July 19, 2024), available at https://www.merriam-webster.com/dictionary/damages .

15

## CONCLUSION

After three bites at the apple, Grimberg has shown that it cannot in good faith plead covered damages. This Court should deny Grimberg's motion with prejudice, holding that amendment is futile.

Respectfully submitted,

/s/ Thomas S. Garrett
Thomas S. Garrett (VSB No: 73790)
HARMAN CLAYTOR CORRIGAN &
WELLMAN, P.C.
4951 Lake Brook Drive, Suite 100
Glen Allen, Virginia 23060-9272
Phone: (804) 747-5200
Fax:   (804) 747-6085
tgarrett@hccw.com

Ezra S. Gollogly (*pro hac vice*)
Joseph Dudek (*pro hac vice*)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Phone: (410) 752-6030
Fax:   (410) 539-1269
egollogly@kg-law.com

*Attorneys for XL Specialty and XL America*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of July, 2024 a true and exact copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

          /s/ *Thomas S. Garrett*